**SOUTHERN ELECTRONICS DISTRIBU-TORS, INC.; CAMAT & AGF and Phoenix, Who Subscribed to Police No. MM11144AA, Plaintiffs,**

**v.**

**AIR EXPRESS INTERNATIONAL COR-PORATION and Air Express International (USA), Inc., Defendants.**

**Civil Action No. 1:97-cv-1571-TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 11, 1998.

---

Prescott Lane Nottingham, Lord Bissell & Brook, Atlanta, GA, for Plaintiffs.

Carey Michael Johnson, David C. Keating, Fellows Johnson & La Briola, Atlanta, GA, for Defendants.

### ORDER

THRASH, District Judge.

This matter is before the Court on the (1) Plaintiffs' Motion for Leave to Substitute New Name of Plaintiff Southern Electronics Distributors, Inc. [Doc. No. 21]; (2) Plaintiffs' Motion for Summary Judgment [Doc. No. 22]; (3) Cross–Motion for Summary Judgment [Doc. No. 30], filed by Defendants Air Express International Corporation ("AEIC") and Air Express International (USA), Inc. ("AEI") (collectively referred to herein as "Defendants"); and (4) Defendants' Motion for Leave to Serve a Summons and Third–Party Complaint upon Marty Smith, d/b/a AirLink [Doc. No. 31].

### I.  BACKGROUND

On or about September 26, 1996, Plaintiff Southern Electronics Distributors, Inc. ("Southern Electronics") purchased 200 computer hard drives from Seagate Technology International ("Seagate"). Southern Electronics paid $182,000 for the hard drives. On or about September 27, 1996, Seagate entered into a contract of carriage with Air Express International Singapore (Pte.) Ltd ("AEI SIN") to transport the hard drives to Southern Electronics in Atlanta, Georgia. AEI SIN issued Air Waybill No. 5755365 ("Air Waybill") that governed the contract of carriage for the delivery of the hard drives from Singapore to Atlanta, Georgia. The Air Waybill provided that the contract of carriage was governed by the rules relating to liability as established by the Warsaw Convention. The parties did not list a monetary amount in the section of the Air Waybill entitled "Shipper's Declared Value for Carriage." Polar Air Cargo transported the hard drives from Singapore to Chicago, Illinois, with a stopover in Taipei, Taiwan, on Polar Air Cargo Flight No. 168. Before the hard drives were cleared through customs, Gunther Transport transported the hard drives from Chicago to Atlanta by truck. The hard drives arrived in Atlanta in October, 1996, and were stored by AEI's warehousing and dock operations agent in Atlanta. Shortly thereafter, an AEI agent discovered that the hard drives were missing from storage.

On November 1, 1996, Seagate submitted a claim on behalf of the consignee, Southern Electronics, to AEI for the alleged fair market value ($182,000) of the missing hard drives. AEI tendered drafts payable to Seagate and then to Southern Electronics in the amount of $5,296.88, which is equal to the gross weight of the hard drives lost multiplied by $9.07, the per-pound limitation of liability set forth in Article 22(2) of the Warsaw Convention. Seagate and Southern Electronics rejected the tenders. Subsequently, Southern Electronics and its insurance carriers filed this Amended Complaint against the Defendants and Marty Smith, d/b/a AirLink, L.C.C. ("AirLink, L.C.C."), to

seek recovery of the full market value of the hard drives caused by the breach of the carriage contract in failing to deliver the goods to Atlanta [Doc. No. 12]. The Plaintiffs asserted that AirLink, L.L.C. was AEI's warehousing and dock operations agent in Atlanta. The Court then granted the Plaintiffs' request to delete reference to "Marty Smith, d/b/a" and leave "AirLink L.C.C." as a Party Defendant. In its Answer, AEI asserted several cross-claims seeking indemnification from AirLink, L.C.C. for any judgment entered in favor of the Plaintiffs. However, the Plaintiffs and AEI subsequently dismissed their claims against AirLink, L.C.C. [Doc. Nos. 36, 37].

The Plaintiffs filed a Motion for Summary Judgment [Doc. No. 22] seeking to recover the fair market value of the missing hard drives. They contend that the Air Waybill omitted essential items under Articles 8(c) and (e) of the Warsaw Convention, respectively requiring the Air Waybill to contain the agreed stopping places en route from Singapore to Atlanta and the name and address of the first carrier. The Plaintiffs argue that Article 9 does not limit the liability to $5,296.88 under Article 22(2) if the airbill did not contain these items. The Defendants moved for Summary Judgment [Doc. No. 30], contending, *inter alia,* that the Air Waybill satisfies Articles 8(c) and (e), and that they are only liable for $5,296.88. Air Express International (USA), Inc. has made an offer of judgment in that amount.

The Plaintiffs filed a Motion for Leave to Substitute the Name of "SED International Holdings, Inc." for Southern Electronics [Doc. No. 21]. The Defendants have not filed a response, and it is, therefore, treated as unopposed under Local Rule 7.1. The motion is granted, and "SED International Holdings, Inc." is substituted for Southern Electronics as a party plaintiff.

The Defendants filed a motion for leave to serve a summons and third-party complaint upon Marty–Smith d/b/a AirLink ("AirLink") [Doc. No. 31]. They contend that the Plaintiffs have tried on two previous occasions to join AirLink as a defendant and that the Plaintiffs have identified the wrong entity on both occasions. They seek to implead Air-Link, AEI's warehousing and dock operations agent in Atlanta, as the party directly responsible for the loss of the hard drives. The Plaintiffs have not filed a response, and it is, therefore, treated as unopposed under Local Rule 7.1. However, in view of the Court's ruling on the Motions for Summary Judgment, the Defendants' claim against Air-Link should be asserted in an independent action which the Defendants may or may not choose to file in federal court. Accordingly, the motion is denied.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The evidence and any inferences that may be drawn should be viewed in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). The party seeking summary judgment must first identify grounds that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Mere denials or allegations by the nonmovant in the form of legal conclusions and unsupported by any specific facts have no probative value and are therefore insufficient to create issues of material fact that would preclude summary judgment. *Broadway v. City of Montgomery,* 530 F.2d 657, 660 (5th Cir.1976).

## III. DISCUSSION

This case is governed by the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in 49 U.S.C. § 40105, commonly

known as the Warsaw Convention. This Convention governs the transportation of goods and passengers in international commerce. It presumes a carrier's liability where cargo is damaged or lost in the course of international travel. *See* Warsaw Convention, Art. 18, Article 22(2) of the Warsaw Convention limits a carrier's liability to approximately $9.07 per pound unless the shipper declares a higher value for the cargo and pays a higher shipping fee. Here, no evidence has been presented establishing that a higher value for the hard drives had been declared or that any extra fees had been paid. It appears that Seagate and Southern Electronics chose to purchase insurance to cover loss of the goods rather than pay the higher freight charges.

■ Article 9 of the Warsaw Convention precludes any limitation of liability if the cargo is accepted without the issuance of an air waybill or if the air waybill does not contain the particulars set out in Article 8. Article 8 of the Warsaw Convention requires, in pertinent part, that an air waybill shall set forth:

> (c) the agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in cases of necessity, and if he exercises that right the alteration shall not have the effect of depriving the transportation of its international character; ...
>
> . . . . .
>
> (e) The name and address of the first carrier.

The Eleventh Circuit has not addressed the issues surrounding when an air waybill satisfies the requirements of Article 8(c) and (e) of the Warsaw Convention. The Second Circuit has held that the language in these sections of Article 8 is clear and unambiguous. *See Maritime Ins. Co., Ltd. v. Emery Air Freight Corp.,* 983 F.2d 437, 440 (2d Cir.1993). When the language of the Warsaw Convention is clear and unambiguous, the Supreme Court has held that it must be strictly construed. *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 134, 109 S.Ct. 1676, 1683–84, 104 L.Ed.2d 113 (1989).

According to the Second Circuit, if an air carrier omits essential particulars such as those described in Article 8(c) and (e), Article 9 automatically deprives the air carrier of limited liability protection. *See Tai Ping Ins. Co., Ltd. v. Northwest Airlines, Inc.,* 94 F.3d 29, 31 (2d Cir.1996). While Article 8 specifies the substantive requirements of the air waybill, it does not limit the form that it may take or the words that may be used to meet its specifications. *See* Warsaw Convention, Art. 8; *Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1033–1035 (2d Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997). Similarly, Article 9 does not impose any special terms or constructions with regard to the requisite particulars. *See* Warsaw Convention, Art. 9; *Maritime,* 983 F.2d at 440.

### A. The Agreed Stopping Place

■ Article 8 requires the carrier to include in its air waybill not only the place of departure and destination but also the agreed stopping places. Warsaw Convention, Art. 8(b) and (c). The purpose for the requirement that the air waybill contain the contemplated stopping places is so that the air waybill itself will notify the shipper of the international character of the flight and the applicability of the Warsaw Convention. *See Tai Ping,* 94 F.3d at 32. While the point of departure and destination ordinarily would indicate the domestic or international character of the flight, Article 8(c) recognizes the possibility of destination and departure within one country with a stopover in another country. *Brink's Limited,* 93 F.3d at 1035. An air waybill must effectively communicate the information necessary for the shipper to understand the international character of the carriage. *Tai Ping,* 94 F.3d at 32. "Incorporation by reference to readily available timetables satisfies Article 8(c)'s requirement ... only if the incorporation effectively reveals the agreed stopping places" and that "effective incorporation depends on the accuracy of other information in the waybill." *Id.*

■ In this case, the Air Waybill satisfies the requirements of Article 8(c). The Air Waybill identifies the cargo of hard drives that were being shipped by Polar Air Cargo, the direct carrier, on Flight No. 168. (Doc. No. 28, Sun Aff. at ¶¶ 3, 8, Exh. A). Just beneath the line identifying the carrier and flight number appears the line "MB: 403–

0097 4050." (*Id.*). This line is a reference to Polar Air Cargo's air waybill. (*Id.*, Exh. B). Thus, the Air Waybill satisfactorily incorporates by reference the direct carrier's air waybill. The direct carrier's air waybill lists Singapore as the airport of departure and that the cargo plane was going to "TPE", the international code for Taipei International Airport in Taiwan. (*Id.*; Doc. No. 40, Jones Aff. at ¶ 3). The direct carrier's air waybill also lists the place of destination of the flight as Chicago, Illinois. (Doc. No. 28, Sun Aff. at ¶¶ 3, 8, Exh. B). The Plaintiffs do not dispute the fact that the shipment was on Flight No. 168 that stopped in Taiwan and Chicago. Therefore, the Court finds the information in both the Air Waybill and the direct carrier's air waybill was accurate as to the stopping places.

▮ The Plaintiffs contend that the Air Waybill and the direct carrier's air waybill failed to (1) identify Gunther Transport as a ground carrier of the hard drives from Chicago to Atlanta and (2) disclose the stops made by the ground carrier. However, Article 8(c) does not require that the Air Waybill identify all of the carriers in the chain of transportation. There is no evidence that the ground carrier made any stops between Chicago and Atlanta. In any event, stops for fuel, food or rest would have been by necessity, and thus, did not have to be disclosed. *See* Warsaw Convention, Art. 8(c). Further, the direct carrier's air waybill was not required to disclose that the hard drives were being transported from Chicago to Atlanta, as Atlanta was not an "agreed stopping place." Atlanta was the destination. The Court concludes, therefore, that the information by the Air Waybill and the referenced air waybill effectively communicated the "agreed stopping places" and the international character of the carriage.

*B. The Name of the First Carrier*

Article 30 of the Warsaw Convention states that a consignor has a right of action against the "first carrier." The requirement in Article 8(e) that the name and address of the "first carrier" be designated appears to be designed to provide the consignor with information about which party it may sue should the cargo be damaged or lost. How-ever, the Warsaw Convention does not define "first carrier" or even "carrier".

▮ Federal aviation law has recognized two classes of carriers, direct and indirect. *Martin Marietta*, 950 F.Supp. at 1256. While direct carriers perform the actual transportation, indirect carriers "provide supportive services, including procuring and assembling cargo for shipment, consolidating multiple shipments into a single shipment for carriage, and arranging transportation with the direct carrier." *Id.* An air freight forwarder is considered an indirect carrier and is entitled to invoke the limited liability protection afforded under the Warsaw Convention to direct carriers. *Royal Ins. v. Amerford Air Cargo*, 654 F.Supp. 679, 682 (S.D.N.Y.1987). An entity is deemed the "first carrier" if it was the first to contract with the consignor by arranging transportation for the cargo aboard the direct carrier. *Martin Marietta*, 950 F.Supp. at 1257. The Plaintiffs do not dispute that AEI qualifies as an indirect carrier, or air freight forwarder, who would be entitled to limited liability protection. They do contend that the Air Waybill fails to describe the "first carrier" with requisite particularity.

▮ The undisputed evidence establishes that Seagate entered into a contract of carriage with AEI SIN, which issued the Air Waybill. Under the section entitled "AIR CARRIAGE," the Air Waybill lists AEI as the first carrier. It is undisputed that AEI is the trade name of AEIC, AEI's parent company, and all the other AEI worldwide group of companies including AEI SIN. The top portion of the Air Waybill has the address of AEI's world headquarters in Darien, Connecticut, and a telephone number. It is undisputed that worldwide claims against AEI are processed and handled at this office. Moreover, the bottom of the Air Waybill provides the address for AEI SIN, which is listed on the Air Waybill as a "carrier/agent." "Article 8(e) does not designate any particular section of a waybill or any particular words which must be used to relay the required information." *Brink's Ltd.*, 93 F.3d at 1035. The Court finds that the Air Waybill contains the requisite name and address of the first carrier, AEI, to provide the Plain-

tiffs with sufficient information in bringing their lawsuit for the lost hard drives. Accordingly, AEI is entitled to the limited liability protection of the Convention.

### IV. SUMMARY

In summary, the Plaintiffs Motion for Leave to Substitute the Name of "SED International Holdings, Inc." for Southern Electronics [Doc. No. 21] is GRANTED, and "SED International Holdings, Inc." is substituted for Southern Electronics as a party plaintiff. The Defendants' Motion for Leave to Serve a Summons and Third–Party Complaint [Doc. No. 31] is DENIED. The Defendants' Motion for Summary Judgment [Doc. No. 30] is GRANTED and the Plaintiffs' Motion for Summary Judgment [Doc. No. 22] is DENIED. The Defendants' liability for the lost hard drives is limited to $5,296.88, which is equal to the gross weight of the hard drives lost multiplied by $9.07, the per-pound limitation of liability set forth in Article 22(2) of the Warsaw Convention. Further, the Plaintiffs are not entitled to prejudgment interest on this amount. *See Deere & Co. v. Deutsche Lufthansa Aktiengesellschaft,* 855 F.2d 385, 392 (7th Cir.1988). The Clerk is directed to enter judgment in favor of the Plaintiffs against the Defendant Air Express International (USA), Inc. in the amount of $5,296.88. Judgment should be entered against the Plaintiffs and in favor of Defendant Air Express International Corporation.