**MARITIME INSURANCE CO. LIMITED, as subrogee of Continent-Wide Enterprises Ltd., Plaintiff–Appellant,**

v.

**EMERY AIR FREIGHT CORP., also known as Emery Worldwide, Defendant–Appellee.**

No. 348, Docket 92–7672.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1992.

Decided Jan. 13, 1993.

911 F.2d 870, 881 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991).

David L. Mazaroli, New York City Law Offices of Yorkston W. Grist, New York City, of counsel, for plaintiff-appellant.

Francis R. Matera, Brooklyn, NY (Matera & Associates, Brooklyn, NY, William D. Bierman, John A. Positano, Westwood, NJ, of counsel), for defendant-appellee.

Before MESKILL, Chief Judge, WINTER, Circuit Judge, and RESTANI,* Judge.

MESKILL, Chief Judge:

This is basically a dispute over the proper method of interpreting international treaties. Maritime Insurance Co. (Maritime) appeals from a decision of the United States District Court for the Southern District of New York, Sweet, *J.*, limiting the liability of Emery Air Freight (Emery) for lost goods under Article 22 of the Convention for the Unification of Certain Rules Relating to International Travel by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* 49 U.S.C.App. § 1502 note ("Warsaw Convention" or "Convention"). Maritime contends that Judge Sweet erred in requiring it to show that certain items omitted from the air waybill were commercially significant. Where the language of a treaty is unambiguous, Maritime argues, a judge may not amend, alter or add to that language no matter how sensible the amendment, alteration or addition might be. In addition, Maritime maintains that because Emery asserted limited liability as an affirmative defense, the burden was on *Emery* to prove that the stipulated omissions were insignificant. Because we agree with Maritime's first argument, we need not reach the burden of proof issue.

### BACKGROUND

The essential facts are stipulated. On October 28, 1988 $58,220 worth of photographic equipment was delivered in good condition to Emery in Panama. An air waybill was issued that same day. Emery was to transport the shipment by air to Continent–Wide Enterprises (Continent) in Toronto; Continent prepaid the freight

* Honorable Jane A. Restani of the United States Court of International Trade, sitting by designation.

charge. The route taken included a stop in Miami, and Pan Am served as the carrier during the initial leg of the trip.[1] Regrettably, the goods were mislaid or misdirected somewhere along the route; they never reached Toronto.

The waybill incorporates the Convention, and all parties agree that the Convention governs this action. As required by the Convention, Maritime, as Continent's subrogee, timely presented its claim of $58,220 to Emery. Emery, however, citing Article 22(2) of the Convention limiting the carrier's liability to $20 per kilogram, offered to settle with Maritime for $4,435.23.[2] Maritime refused and sued for the full amount.

Maritime's refusal was predicated on Articles 8 and 9 of the Convention. Article 8 states in pertinent part:

> The air waybill shall contain the following particulars:
>
> (a) The place and date of its execution;
>
> . . . .
>
> (c) The agreed stopping places...;
>
> . . . .
>
> (e) The name and address of the first carrier;
>
> . . . .
>
> (i) The weight, the quantity, the volume, or dimensions of the goods.

Article 9 then states:

> If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.

The particulars listed in subsections (a), (c), and (e) were not contained in Emery's air waybill. As for subsection (i), although the weight and quantity of the equipment were specified, the volume and dimensions were not. Maritime contends that under Article 9, all these omissions strip Emery of its limited liability protection.

On July 2, 1991 Judge Sweet denied Maritime's motion for summary judgment, finding essentially that omitted particulars do not automatically deprive a carrier of limited liability under the Convention. Citing our decision in *Exim Industries v. Pan Am World Airways*, 754 F.2d 106 (2d Cir. 1985), the judge found that Maritime had not satisfied its burden of proof that the omissions were commercially significant or prejudicial. He denied Maritime's request for reargument and entered final judgment on May 28, 1992. He ruled in favor of Maritime on liability, but limited damages to $20 per kilogram, plus interest. Maritime now appeals, claiming that it is entitled to the full $58,220.

## DISCUSSION

This appeal centers on the scope and continued validity of *Exim Industries*, 754 F.2d 106. In *Exim* we held that Pan Am could avail itself of the Convention's limited liability provisions for lost goods even though the waybill did not include the particulars specified in subsections (h) and (i) of Article 8. Those subsections read as follows: "(h) The number of packages, the method of packing, and the particular marks or numbers upon them; (i) The weight, the quantity, the volume, or dimensions of the goods." In addition, although subsection (q) requires "[a] statement that the transportation *is* subject to the rules relating to liability established by this convention" (emphasis added), the air waybill at issue in *Exim* stated more equivocally only that the transportation *may be* subject to those rules. We found that the missing particulars "did not prejudice the shipper and were of little commercial significance," 754 F.2d at 108, and that the "may be" language provided adequate notice. *Id.* We therefore upheld the carrier's limited liability.

---

**1.** Emery's third-party complaint against Pan Am was dismissed after Pan Am filed for bankruptcy protection.

**2.** This amount, $4,435.23, is based on a weight of 222 kilograms. While the figure does not exactly equal the product of 222 kilograms and $20, it is close, and we assume that the difference is due to rounding errors in calculating the weight.

At first blush then, it might seem that we must determine whether the particulars omitted from Emery's waybill are commercially significant. However, we believe that *Exim* should be limited to its facts and that the "commercially significant" test is inapplicable in the present context.

Two recent cases have reiterated the principle first espoused by Justice Story in *In re The Amiable Isabella*, 19 U.S. (6 Wheat.) 1, 71, 5 L.Ed. 191 (1821), that

> to alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not an exercise of judicial functions. It would be to make, and not to construe a treaty.

*See Chan v. Korean Air Lines*, 490 U.S. 122, 135, 109 S.Ct. 1676, 1684, 104 L.Ed.2d 113 (1989); *Victoria Sales Corp. v. Emery Air Freight*, 917 F.2d 705, 707 (2d Cir. 1990). "[W]here the text is clear ... we have no power to insert an amendment." *Chan*, 490 U.S. at 134, 109 S.Ct. at 1683–84. Even if a judicial interpretation is "sensible," "to engraft such an interpretation onto the plain language of Article 18 would require an impermissible judicial amendment of the Convention." *Victoria Sales*, 917 F.2d at 708. Both precedent and reason counsel that courts refrain from altering even slightly the plain, unambiguous language of a treaty negotiated among diverse sovereign nations. On the other hand, when language is unclear, courts are enjoined to construe treaties more liberally than private agreements and may employ traditional methods of interpretation. *See Air France v. Saks*, 470 U.S. 392, 396, 105 S.Ct. 1338, 1340, 84 L.Ed.2d 289 (1985). However, there can be no doubt that we may rely on these methods *only* when there is ambiguity in the text of the treaty. *Chan*, 490 U.S. at 134, 109 S.Ct. at 1683; *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 432, 63 S.Ct. 672, 678, 87 L.Ed. 877 (1943).

Maritime contends that *Exim* has been entirely overruled by *Chan* and *Victoria Sales*. We cannot agree. Just recently we heard and rejected the same argument in *Distribuidora Dimsa v. Linea Aerea Del Cobre S.A.*, 976 F.2d 90 (2d Cir.1992). We wrote, "*Exim* held that subsections (h) and (i) are ambiguous, and we therefore applied interpretive techniques to give them meaning." *Id.* at 96 (citations omitted). The ambiguity in subsections (h) and (i) arises because the text does not make clear whether the items listed in each subsection should be read conjunctively or disjunctively. Moreover, differences among the French original and the British and American translations create further confusion. In *Exim* we resolved the ambiguity in accordance with decisions reached by several foreign courts. This was appropriate because where ambiguity exists the plain meaning rule does not apply and we are free to employ traditional interpretive methods.

Our opinion in *Distribuidora Dimsa* did not address subsection (q). The waybill in *Exim* stated that the Convention *may be* applicable instead of stating categorically that it *is* applicable. However, we think the Court permissibly looked to the framers' intent in that instance because there was no pure *omission* of a particular. Article 9 only requires that the waybill contain the subsection (q) particular; it does not address the problem of slight deviations in the language. Article 9 offers no clear guidance in this respect, and therefore the principle espoused in *Chan* and *Victoria Sales* does not apply. For these reasons we think *Exim* remains good law.

However, *Exim* must be limited to its facts; that is, the "commercially significant" test applies *only* to subsections (h) and (i). Except for those two subsections, the language of Articles 8 and 9 is clear. Article 9 states simply and categorically that if the waybill does not contain the particulars listed in Article 8(a)–(i) and (q), the carrier will not be entitled to limit its liability. Subsections (a), (c), and (e) are also clear, unambiguous statements. No confusion can possibly arise as to the meaning of "the place and date of its execution," "[t]he agreed stopping places" or "[t]he name and address of the first carri-

er." *Chan* and *Victoria Sales* prohibit us from engrafting a commercially significant test on Articles 8 and 9 except where the text is ambiguous, that is, except with respect to subsections (h) and (i). *Exim* is thus limited to its facts, and to the extent any district court cases in this Circuit have expanded the *Exim* holding beyond subsections (h) and (i), they are hereby overruled.

■ Applying these results to the facts before us, it is clear that Maritime must prevail. Particulars listed in subsections (a), (c), and (e) were missing from the waybill. Under Article 9, the carrier is not permitted to limit its liability if those particulars are absent. We need not address the omission of the subsection (i) particulars and can thereby avoid engaging in any commercial significance analysis. Therefore, we hold that Maritime is entitled to full recovery.

### CONCLUSION

For the foregoing reasons we vacate the judgment of the district court and remand for entry of an order awarding Maritime damages in the amount of $58,220. Because nothing in the Convention prevents an award of prejudgment interest where liability is not limited and because the amount in controversy is stipulated and therefore fixed and evident, prejudgment interest should be awarded to Maritime in an amount to be determined by the district court on remand.

The parties shall bear their own costs.