The TAI PING INSURANCE COMPANY, LTD. and Jetergar Ltd., Plaintiffs–Appellants,

v.

NORTHWEST AIRLINES, INC., d/b/a Northwest Orient Cargo, Defendants–Appellees.

No. 95–9278.

United States Court of Appeals, Second Circuit.

Argued May 15, 1996.

Decided Aug. 8, 1996.

David L. Mazaroli, New York City (George P. Hassapis, Michael W. Lodwick, Fisher & Porter, Long Beach, CA, of counsel), for Appellants.

Charles E. Schmidt, New York City (Kennedy Lillis Schmidt & English, New York City, of counsel), for Appellees.

Before LUMBARD, MESKILL and MINER, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiffs-appellants The Tai Ping Insurance Company and Jetergar Ltd. (collectively "Tai Ping") appeal from a judgment of the United States District Court for the Southern District of New York, Griesa, *C.J.*, *Tai Ping Ins. Co. Ltd. v. Northwest Airlines*, 897 F.Supp. 127 (S.D.N.Y.1995), denying their motion for summary judgment, granting defendants-appellees Northwest Airlines, Inc.'s and Northwest Orient Cargo's (collectively "Northwest") cross-motion for partial summary judgment and entering judgment against defendants-appellees in the amount of $1,320. We conclude that the district court erred in its application of Articles 8 and 9 of the Convention for Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. 876 (1934), *reprinted in* note following 49 U.S.C.A. § 1502 (the "Warsaw Convention" or the "Convention"). Accordingly, we reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

The following facts are not in dispute. Jetergar Ltd. of Hong Kong was the purchaser and intended consignee of a $232,155 shipment of aircraft parts insured by plaintiff-appellant Tai Ping Insurance Company. Northwest contracted with the shipper and seller of the cargo to provide air transportation from Chicago, Illinois to Hong Kong. Northwest did not deliver the shipment to Jetergar Ltd.; the shipment was lost prior to its intended arrival in Hong Kong.

The air waybill[1] issued by Northwest for the shipment was a two-sided printed form dated December 10, 1992. The face side of the waybill disclosed that Northwest maintained insurance, listed data relating to the shipment, and listed the airport of departure and the airport of final destination. Although it identified the origination flight as flight number "901/10"—flight 901 on December 10—the actual departure date was December 15 and the shipment was to be transferred at Narita, Japan to flight 907. Although the flight routing to Hong Kong included regularly scheduled stops at Anchorage, Alaska and Narita, Japan, the designated spaces for the listing of stopping places between Illinois and Hong Kong were blank.

The reverse side of the waybill contained boilerplate text. The text included statements that the agreed stopping places were "set forth on the face [t]hereof or shown in Carrier's timetables as scheduled stopping places for the route" and that the timetables were "made part [t]hereof." Northwest's published timetable disclosed regularly scheduled stops in Anchorage, Alaska and Narita, Japan for all trans-Pacific freighter flights on December 10, 1992. The waybill also included a statement that it was subject to the Northwest tariff, which was made "part [t]hereof." The tariff in turn provided that the effective timetables were those on the date on which the shipment was received, but that Northwest did not guarantee any particular flight or time for commencement of carriage.

In the proceedings below, Tai Ping filed a motion for summary judgment seeking to recover the full value of the missing cargo, $232,155. Tai Ping contended that the fail-

---

1. An air waybill is a written document describing the shipping arrangement between the air carrier and the shipper. It includes, *inter alia,* the point of origin and destination and a description of the goods included in the shipment. *See* Warsaw Convention, Arts. 5–16; *see also* Black's Law Dictionary 1593 (6th ed. 1990).

ure to list the scheduled stopping places en route to Hong Kong on the air waybill violated Article 8(c) of the Warsaw Convention and, pursuant to Article 9 of the Convention, deprived Northwest of the limited liability protection provided in Article 22(2). Northwest cross-moved for partial summary judgment, seeking to limit liability to $1,320 under Article 22(2) of the Convention. Northwest contended that the reference to its timetables on the reverse side of the waybill incorporated those timetables into the waybill and thereby satisfied Article 8(c). The district court agreed with Northwest and entered judgment against Northwest in the amount of $1,320. This appeal followed.

## DISCUSSION

■ This appeal requires us to interpret Articles 8 and 9 of the Warsaw Convention. Our task in interpreting the Warsaw Convention begins "with the literal language." *Buonocore v. Trans World Airlines,* 900 F.2d 8, 9 (2d Cir.1990). Our task also ends there if the language is "reasonably susceptible of only one interpretation." *Id.* at 9–10; *see also Victoria Sales Corp. v. Emery Air Freight,* 917 F.2d 705, 707 (2d Cir.1990) (stating that "when the text of a treaty is clear, a court shall not, through interpretation, alter or amend the treaty" (citing *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 134, 109 S.Ct. 1676, 1683–84, 104 L.Ed.2d 113 (1989))). We may apply traditional methods of interpretation only when the text of the treaty is unclear. *Chan,* 490 U.S. at 134, 109 S.Ct. at 1683–84.

The Convention addresses three transportation documents and the "particulars" which must be set forth in each document. The three documents are passenger tickets, baggage checks and air waybills. *See* Warsaw Convention, Chap. II, Sec. I (passenger tickets), Chap. II, Sec. II (baggage checks), Chap. II, Sec. III (air waybills). The consequences for violating a "particular" requirement depend on which transportation document and which "particular" are involved.

In general, Article 18 of the Warsaw Convention presumes an air carrier liable for loss or damage to goods in transit, but Article 22(2) limits liability to 250 francs per kilogram, or approximately $9.07 per pound. *Id.,* Arts. 18, 22(2). However, under Article 9, the Convention eliminates limited liability protection if the air waybill does not "contain" certain essential "particulars" enumerated in Article 8. *Id.,* Art. 9.

More specifically, Article 8 of the Convention requires that the air waybill "shall contain" seventeen particulars. Article 8 provides, in pertinent part:

The air waybill shall contain the following particulars:

. . . .

(c) The agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and if he exercises that right the alteration shall not have the effect of depriving the transportation of its international character.

*Id.,* Art. 8(c). Article 9 makes ten of the seventeen particulars essential, including the "agreed stopping places," *id.,* by stating that the carrier is not entitled to limited liability protection "if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q)." *Id.,* Art. 9.

■ As we noted in *Brink's Ltd. v. South African Airways,* 93 F.3d 1022 (2d Cir.1996), argued contemporaneously with this case,[2] our cases interpreting Articles 8 and 9 of the Warsaw Convention yield three rules. First, if an air carrier *omits* from its air waybill any of the enumerated particulars of subsections (h) and (i) of Article 8, Article 9 operates to deprive the carrier of limited liability protection if the omitted particular is of commercial significance. *Exim Indus. v. Pan Am. World Airways,* 754 F.2d 106, 108 (2d Cir.1985). Second, if an air carrier *omits* any other essential particular from its air waybill, Article 9 automatically deprives the air carrier of limited liability protection regardless of commercial significance. *Maritime Ins. Co. Ltd. v. Emery Air Freight Corp.,* 983 F.2d 437, 440 (2d Cir.1993).

**2.** Familiarity with *Brink's,* 93 F.3d 1022, is assumed.

Third, if an air carrier includes an essential particular in its air waybill, but *deviates* in language or some other respect, a court may look beyond the language of the text to secondary tools of interpretation in determining liability. *Id.* Each of these rules comports with the general rule that where the text is clear, a court has "no power to insert an amendment." *Chan,* 490 U.S. at 134, 109 S.Ct. at 1684.

Our decision in *Brink's* enunciated an additional rule. In that case, the shipper contended that Article 8(c) required the air carrier to list the agreed stopping places within the air waybill itself. The carrier instead had referred to its timetables for the stopping places. We reasoned that resort to secondary tools of interpretation was permissible and necessary because the *Maritime* decision addressed only the *pure omission* of agreed stopping places and Articles 8 and 9 were otherwise ambiguous. *Brink's,* 93 F.3d at 1033. We noted that other signatories to the Convention approve of satisfying Article 8(c) by incorporating timetables into the air waybill. *Id.* We also noted that incorporation of readily available timetables provides a shipper with sufficient notice of the international character of the flight, thereby realizing the drafters' purpose in including the agreed stopping places in the air waybill. *Id.* Accordingly, we held that an air waybill that incorporates readily available timetables satisfies Article 8(c)'s requirement that the air waybill "contain" the "agreed stopping places" and does not deprive the air carrier of limited liability protection under Article 9. *Id.*

The purpose behind Article 8(c), which we examined in *Brink's,* is most pertinent here. As we explained, the participants to the Convention included the requirement that the waybill contain the contemplated stopping places so that the waybill itself would notify the shipper of the international character of the flight and, thus, the applicability of the Warsaw Convention. *Brink's,* 93 F.3d at 1034–35. We also explained that while the point of departure and destination ordinarily would indicate the domestic or international character of the flight, Article 8(c) recognizes the possibility that a contract of carriage

within one sovereign may include a stopover in another sovereign. *Id.* Thus, Article 8 requires the air carrier to include in its waybill not only "[t]he place of departure and of destination," Warsaw Convention, Art. 8(b), but also "[t]he agreed stopping places," *id.,* Art. 8(c).

An air waybill cannot realize Article 8(c)'s purpose of establishing the domestic or international character of the carriage unless it effectively conveys the necessary information. In other words, incorporation by reference to readily available timetables satisfies Article 8(c)'s requirement that the waybill "contain" the agreed stopping places only if the incorporation effectively reveals the agreed stopping places. An air waybill cannot effectively reveal the agreed stopping places by incorporation of its timetables unless it also includes the information necessary to apply those timetables to the contract of carriage. Thus, effective incorporation depends on the accuracy of other information in the waybill. *Cf. Kramer v. Time Warner Inc.,* 937 F.2d 767, 777 (2d Cir.1991) (stating in context of securities laws that the practice of disclosure through incorporation by reference "should be restricted to circumstances in which no reasonable shareholder can be misled"); *New York Marine & Gen. Ins. Co. v. S/S "Ming Prosperity",* 920 F.Supp. 416, 427 (S.D.N.Y.1996) (stating in context of arbitration agreements that "an incomplete or inaccurate reference ... may prove insufficient to incorporate" (quoting *Coastal States Trading v. Zenith Navigation S.A.,* 446 F.Supp. 330, 338 (S.D.N.Y.1977))).

Northwest's waybill did not effect a valid incorporation of regularly scheduled stops in Anchorage, Alaska and Narita, Japan by reference to its timetables. Although the waybill stated that the agreed stopping places were those "shown in Carrier's timetables as scheduled stopping places for the route," the front of the waybill incorrectly identified the flight number and date of the flight as "901/10"—flight number 901 on December 10, 1992. The shipment departed on flight 901 on December 15, 1992 and was transferred to flight 907 in Narita, Japan on December 16, 1992. Thus, although the waybill referred to readily available timetables,

the timetables referred to did not apply to the transportation of Tai Ping's shipment.

The waybill included incorrect information regarding the date of departure. Without the correct date of departure, the shipper could not refer to the timetables to ascertain the stopping places. Similarly, the waybill did not include any information regarding the transfer of the shipment to flight 907 in Narita, Japan. Although carriage to be performed by several successive air carriers is deemed to constitute a single carriage, Warsaw Convention, Art. 1(3), so that such information generally might not be necessary, transfer information is necessary when an air waybill incorporates regularly scheduled stops in satisfaction of Article 8(c) by reference to its timetables. Without notice of the transfer, the shipper could not track its shipment and discover the scheduled stops from the timetables. Thus, in light of the incorrect and omitted information, Northwest's air waybill did not incorporate or "contain" the agreed stopping places under its contract of carriage with Tai Ping.[3]

The provision contained in the Northwest tariff, to the effect that the carrier does not guarantee any particular flight or time for commencement of carriage, does not protect Northwest from the loss of limited liability under Article 9. Although the air waybill incorporates the Northwest tariff, and although the terms of the tariff are also the terms of the contract of carriage, *Tishman & Lipp v. Delta Air Lines*, 413 F.2d 1401, 1403 (2d Cir.1969), the terms of the tariff do not address or affect the validity of Northwest's attempt at incorporation by reference. In other words, while the terms of the contract of carriage allow Northwest to change the time for commencement of flight and the flight number unilaterally, the Warsaw Convention still requires Northwest to include the "agreed stopping places" in its air waybill.

Similarly, the statement in Northwest's tariff, that the effective timetables are those on the date on which the shipment is received, does not rectify the mistakes in and omissions from this air waybill. Article 8(c) allows the air carrier to alter the agreed stopping places for the contract of carriage only in necessity. Warsaw Convention, Art. 8(c). Thus, a reference to timetables on a date other than the date of shipment does not effect an incorporation of regularly scheduled stops on the date of shipment. If the air waybill does not effect a valid incorporation within the air waybill itself, it cannot be said to "contain" the required information.

In short, if Northwest chooses both to incorporate the agreed stopping places by reference to its timetables and to alter essential terms of the contract on which the incorporation depends, then Northwest bears the risk that the incorporation will fail. Article 8(c) takes precedence over the terms of the tariff. Warsaw Convention, Art. 33 (noting that parties to a contract of carriage may agree on terms which "do not conflict with the provisions of this convention"); *Butler's Shoe Corp. v. Pan Am. World Airways*, 514 F.2d 1283, 1284–85 (5th Cir.1975).

We recognize that it appears onerous to deprive Northwest of limited liability protection under Article 9 for its failure to include the agreed stopping places as required by Article 8(c). Concededly, the air waybill reveals a contract of carriage between Chicago and Hong Kong and therefore reveals the international character of the flight and the applicability of the Warsaw Convention. Nevertheless, if the air waybill does not *incorporate* the agreed stopping places effectively, the air waybill does not *contain* the information required by Article 8(c). It *omits* the information.

As we have stated before, the language of Article 9 is clear with respect to omissions. If an air carrier omits the agreed stopping places from its air waybill, Article 9 deprives the air carrier of limited liability protection. *Maritime Ins.*, 983 F.2d at 440. The plain language of Article 9 does not make the loss of limited liability protection contingent on prejudice to the shipper or consignee.

---

**3.** Even were we to read the Article 8(c) proviso concerning the carrier's right to alter the agreed stopping places in case of necessity as embracing the right to change the date and the flight also, there is no evidence of necessity on this record.

34

Although this may seem commercially unreasonable today, "to engraft such an interpretation onto the plain language of [Article 9] would require an impermissible judicial amendment of the Convention." *Id.* (quoting *Victoria Sales,* 917 F.2d at 708); *see Corocraft Ltd. v. Pan Am. World Airways,* [1969] 1 Q.B. 616, 628 (Q.B.D.1968), *rev'd on other grounds,* [1969] 1 Q.B. 648 (Eng.C.A.1968) (approving of incorporation of timetables in satisfaction of Article 8(c); disapproving of interpretation which makes inclusion of agreed stopping places unnecessary if the international character of the flight is actually known to the shipper or apparent from other information contained within the waybill (dicta)). Thus, Article 9 deprives Northwest of limited liability protection for the loss of the Tai Ping cargo.

## CONCLUSION

The district court erred in granting Northwest's motion for partial summary judgment and in entering judgment against Northwest for the limited liability amount. Accordingly, the judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.