AMERICAN HOME ASSURANCE
COMPANY a/s/o BULOVA
CORPORATION, Plaintiff,

v.

JACKY MAEDER (HONG KONG)
LTD., et al., Defendants.

No. 96 Civ. 5154(LAK).

United States District Court,
S.D. New York.

March 31, 1998.

As Amended April 29, 1998.

John K. McElligott, Donovan, Parry, Carbin, McDermott & Radzik, New York, NY, for Plaintiff.

Stephen J. Fearon, Condon & Forsyth, New York, NY, for Defendants Singapore Airlines, Ltd. and Contact Air Cargo Services.

Robert D. Mercurio, Lane & Mittendorf, LLP, New York, NY, for Defendant Jacky Maeder (Hong Kong) Ltd.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action to recover for the loss of an air cargo as a result of an armed robbery at John F. Kennedy International Airport in New York City. In these cross-motions for summary judgment, the Court is called upon to determine whether the defendants' liability for the lost cargo is limited under the Warsaw Convention[1] (the "Convention"). Plaintiff American Home Assurance Company ("American Home") contends that the defendants lost their liability limitations because the air waybill did not contain the particulars required by the Convention. Defendants Singapore Airlines, Ltd. ("Singapore"), the carrier, and Contact Air Cargo Services ("Contact"), from whose facility the goods were stolen, disagree and seek partial summary judgment limiting their liability.

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C.A. § 40105.

## Facts [2]

The essential facts are largely undisputed. Suppliers of plaintiff's subrogor, Bulova Corporation ("Bulova"), delivered 47 cartons of watches to defendant Jacky Maeder (Hong Kong) Ltd. ("Maeder"), the consignor, in Hong Kong for shipment to New York. Maeder prepared a master air waybill for the transport and delivered the cargo to Singapore for shipment. The master air waybill space denominated "flight/date—for carrier use only" bore the typewritten entry "SQ001/04/AUG." [3] The parties agree that this was a reference to Singapore Airlines flight number 1 on August 4, 1995. In fact, however, the shipment left Hong Kong for Singapore on Singapore Airlines flight number 865 some hours later than the departure of flight number 1 and from Singapore traveled to New York, via Frankfurt, aboard Singapore Airlines flight number 26. Defendants Singapore and Contact contend that this was because Maeder never booked the cargo on flight 1 but instead booked the shipment on flights 865 and 26.[4] Maeder disputes this and contends that Singapore confirmed to it that space was available on flight 1 for the watches.[5]

The parties agree that the air waybill contained no references to either flight number 865 or flight number 26. Nor did the waybill refer to any stops in Frankfurt or Singapore. The reverse side of the waybill, however, did contain the following language:

"The agreed stopping places (which may be altered by carrier in case of necessity) are those places, except the place of departure and the place of destination, set forth on the face hereof or shown in carrier's timetables as scheduled stopping places for the route."

\*    \*    \*    \*    \*    \*

"Carrier may substitute alternative carriers or aircraft and may without notice and with due regard to the interests of the shipper substitute other means of transportation. Carrier is authorized to select the routing or to change or deviate from the routing shown on the face hereof." [6]

Singapore's timetables in effect in August 1995 reveal several possible routes for shipments from Hong Kong to New York.[7] Flight number 2 was scheduled to fly to New York via San Francisco. Flight numbers 1, 865 and 866 were scheduled from Hong Kong to Singapore, and flight number 26 was scheduled from Singapore to New York via either Frankfurt or Amsterdam, depending upon the day of the week. Routes through San Francisco or Los Angeles also were available.[8]

Upon arrival of the shipment in New York, Singapore delivered the cargo to Contact to await pickup. While the cargo was in Contact's custody, armed robbers entered the warehouse, tied up the security guard, and stole the watches at issue here. Plaintiff paid Bulova $304,981.85, which included a total claim of loss of $277,256.23 plus a $27,725.62 insurance mark-up,[9] and was subrogated to Bulova's rights.[10]

## The Summary Judgment Motions

Plaintiff claims that the air waybill prepared by Maeder did not contain the agreed stopping places as required by Article 8(c) of the Convention and that the defendants therefore lose the limitations of liability provided for in Articles 20 and 22(2) of the

2. This Court assumes familiarity with its prior opinion in this case. *American Home Assur. Co. v. Jacky Maeder (Hong Kong) Ltd.*, 969 F.Supp. 184 (S.D.N.Y.1997).

3. Pl.Ex. B.

4. Singapore and Contact Rule 56.1 Statement ¶ 13.

5. Responses of Defendant Jacky Maeder (Hong Kong) Ltd. to Interrogatories of Defendants Singapore Airlines, Ltd. and Contact Air Cargo Services ("Maeder Int. Ans."), No. 7.

6. Pl.Ex. B ¶¶ 3, 8.1.

7. Pl.Ex. D.

8. Christiansen Dep. 29.

9. Bulova was paid an extra 10 percent as an "insurance factor" for which plaintiff does not seek recovery. Pl. Mem. 21.

10. Pl.Ex. O, P.

Convention to which they otherwise might be entitled. Specifically, plaintiff notes that the itinerary of Singapore Airlines flight number 1, the flight referred to in the waybill, did not contain a stop in Frankfurt whereas the actual itinerary did. Plaintiff contends also that neither liability nor the amount of damages has been contested and therefore that they are entitled to judgment in the amount of $277,256.23 plus interest if the Court finds that the defendants failed to comply with Article 8(c).

Defendant Maeder contends that there were no "agreed stopping places" to include on the waybill. All of the defendants argue that the waybill complies with Article 8(c) because Frankfurt was a regularly scheduled stop and the waybill referred to Singapore's timetables in which the regularly scheduled stops were listed. The defendants argue further that the plaintiff has failed to prove that they engaged in wilful conduct and that Article 25 therefore of the Convention does not preclude a limit on their liability.[11] Apart from their defenses under Articles 20 and 25 of the Convention, however, the defendants did not contest the fact of liability or the amount of damages.[12] Thus, the only issue for resolution on summary judgment is whether the defendants complied with Article 8(c) and, if not, whether that failure deprives

them of the limits on liability under the Convention.[13]

### Discussion

The Warsaw Convention governs both summary judgment motions. In general, the Convention presumes an air carrier liable for loss or damage to goods in transit[14] but limits the carrier's liability so long as the carrier complies with certain preconditions. Under Article 20, a carrier is not liable if it takes "all necessary measures to avoid the damage" to the goods. And Article 22 limits a carrier's liability to 250 francs per kilogram for lost goods. These limitations on a carrier's liability are eliminated, however, if the carrier "accepts goods without an air waybill having been made out, or if the air waybill does not contain" certain "particulars" relating to the goods and shipment.[15] Among the requisite particulars is that set forth by Article 8(c)—a statement of any "agreed stopping places."[16] Liability limitations are lost also if the "damage is caused by [the carrier's] wilful misconduct."[17]

### Compliance with Article 8(c)

The defendants make essentially two arguments with respect to compliance with Article 8(c). Defendant Maeder contends that there were no agreed stopping places because Bulova, plaintiff's subrogor, and Maeder never discussed or agreed upon any par-

---

**11.** At oral argument, the defendants contended that apart from this motion, they still had a defense under Article 20 of the Convention, which provides that a "carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures." Because the Court holds that failure to comply with Article 8(c) eliminates defenses under both Articles 20 and Article 22, the Court need not address separately defendants' Article 20 argument.

**12.** *See* Defendants Singapore and Contact Partial Summary Judgment Mem.; Maeder Resp. Mem.; Singapore and Contact Counter Rule 56.1 Statement ¶¶ 44–48; Maeder Rule 56.1 Statement in Response to Rule 56.1 Statement of Plaintiff ¶¶ 44–48.

**13.** The Court held earlier in this case that Contact's right to limitation of liability "stands and falls with that of its principal," Singapore Airlines. 969 F.Supp. at 192. As to Maeder, Article 10 of the Convention holds the consignor "liable for all damages suffered by the carrier or any

other person by reason of the irregularity, incorrectness or incompleteness of the said particulars and statements." Because Maeder opposed plaintiff's summary judgment motion only on the grounds of Articles 22 and 25 defenses, the Court deems liability and damages admitted.

**14.** *See* Art. 18(1) ("The carrier shall be liable for damage sustained in the event of the destruction or loss of, or damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.").

**15.** Art. 9 ("If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.").

**16.** Art. 8(c).

**17.** Art. 25(1).

ticular route for the cargo to follow. On this theory, because there were no stopping places agreed upon, none need be included in the waybill. To the extent that there were agreed stopping places, the defendants contend that the waybill complied with Article 8(c), although the face of the air waybill did not mention either Singapore or Frankfurt, because the language on the back of the waybill incorporated those two cities as agreed stopping places by reference to Singapore's timetables.

*"Agreed" Stopping Places*

The relevant consideration is whether an agreement as to stopping places existed between Singapore, the carrier, and Maeder, Bulova's agent.[18] The Court looks first to the express language of the contract between Singapore and Maeder—the waybill.[19] The back of the air waybill defines "agreed stopping places" as "those places, except the place of departure and the place of destination, set forth on the face hereof or shown in Carrier's timetables as scheduled stopping places for the route."[20] As there were no stopping places set forth on the face of the waybill, the only agreed stopping places, if any, were those shown in Singapore's timetables as stopping places for the Hong Kong to New York route. Singapore's timetables, however, reveal several possible stopping places for shipments from Hong Kong to New York.[21] Because the contract is therefore susceptible of several different interpretations, resort to parol evidence for help in interpreting the contract is appropriate.[22]

According to Singapore's Michael Christiansen, Maeder booked the shipment on flight 865 from Hong Kong to Singapore and on flight 26 from Singapore to New York through Frankfurt. Christiansen's affidavit is supported by the booking "history" of the air waybill, which shows that it was booked only on flights 865 and 26, and by the booking list for flight 1 which makes no mention of this particular air waybill.[23] Maeder denies that it booked the goods on flights 865 and 26, but affirmatively states only that it possessed confirmation of space on flight 1, the flight indicated on the waybill.[24] Maeder does not say how it intended to get the goods from Singapore to New York.

While at first blush there appears to be a genuine issue of fact as to whether Maeder and Singapore agreed on Frankfurt as a stopping place, this issue evaporates upon reading Maeder's own version of the case.[25] Maeder takes the position that there was only one route from Singapore to New York and that, given the date of the shipment, Bulova effectively agreed to shipment through Singapore and Frankfurt.[26] By Maeder's own logic, Maeder and Singapore must have agreed to stopping places in Singapore and Frankfurt because that was the only way for the cargo to get from Singapore to New York. Because Singapore and Frankfurt were agreed stopping places, the Court next must determine whether the waybill effectively incorporated those agreed stopping places by reference to Singapore's timetables.

18. Maeder's extensive argument that the stopping places were of "absolutely no concern" to Herbert Ehrichs of Bulova is therefore irrelevant.

19. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir.1996).

20. Pl.Ex. F ¶ 3.

21. For example, flight number 2 was scheduled from Hong Kong to New York via San Francisco and flight numbers 865 and flight 26, the flights on which the cargo actually traveled, were scheduled from Hong Kong to Singapore and then on to New York via either Frankfurt or Amsterdam.

22. *See Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525 (2d Cir.1990).

23. Christiansen Aff. ¶ 11 and Ex. C.

24. *See* Maeder Rule 56.1 Statement in Resp. to Rule 56.1 Statement of Singapore Airlines, Ltd. and Contact Air Cargo Svcs., Inc. ¶ 13; Maeder Int. Ans., Int. 7.

25. In addition, Maeder has not submitted proof in the form required by Rule 56(e). It relies only upon its interrogatory answer for the proposition that its Mr. Leung had confirmed space on flight 1. But the answers are verified by someone else and there is no showing that that individual was competent to testify to whatever transpired between Singapore and Maeder.

26. *See* Maeder Resp. Mem. 25–28.

*Inclusion of Stopping Places by Reference to Timetables*

■ Compliance with Article 8(c) by way of reference to a carrier's regularly published timetables was approved of by the Second Circuit in *Brink's Limited v. South African Airways.*[27] Mere reference to the carrier's timetables does not necessarily satisfy Article 8 (c), however. The timetable reference is sufficient "only if the incorporation effectively reveals the agreed stopping places" by "includ[ing] the information necessary to apply those timetables to the contract of carriage."[28] As the Second Circuit noted in *Tai Ping*, "effective incorporation depends on the accuracy of other information in the waybill."[29]

The *Tai Ping* court examined a waybill similar to the one at issue here and found that it did not effectively incorporate the regularly scheduled stops. In that case, the waybill noted that the shipment was from Chicago to Hong Kong but failed to include the stops in Anchorage, Alaska, and Narita, Japan, en route. The waybill contained, moreover, an incorrect flight number and an incorrect date of flight and it failed to include any information regarding the transfer of the shipment to a new flight in Narita. The court found that "transfer information is necessary when an air waybill incorporates regularly scheduled stops in satisfaction of Article 8(c) by reference to its timetables. Without notice of the transfer, the shipper could not track its shipment and discover the scheduled stops from the timetables."[30] In light of all the errors and omissions contained on the waybill, the *Tai Ping* court found that the waybill did not incorporate or "contain" the agreed stopping places.

The waybill in this case also did not contain the correct flight number. Nor did it contain any information about the transfer of the goods to a new flight in Singapore. Without the correct flight number or information about the transfer of the goods to a

new flight in Singapore, the waybill did not provide sufficient information for the shipper to discover the stopping places by looking in the carrier's timetables.

Defendants respond that despite the incorrect flight number and transfer information, the timetables nevertheless revealed that the cargo was to travel aboard Singapore flight number 26 because that was the only direct flight indicated for the route from Singapore to New York. The defendants' argument, however, is misplaced. First, under the terms of the contract as described on the back of the waybill, the carrier had the right to transfer the cargo to another carrier in Singapore, which would render any reference to Singapore's timetables meaningless.[31] Second, Singapore's August 1995 timetable reveals that flight number 26 stopped in either Frankfurt or Amsterdam depending on the day of the week. Because nothing in the contract required the goods to be shipped on a particular day, reference to the timetable would not assist the shipper in determining which of the two cities was on the shipment's itinerary even if the possibility of transfer to another carrier were ignored. Finally, there apparently were other routes, albeit less direct, by which Singapore could have transported the goods from Singapore to New York apart from flight 26. Singapore's Michael Christiansen admitted in his deposition that at that time the goods could have been shipped to New York on Singapore through San Francisco or Los Angeles.[32]

Accordingly, the Court holds that the waybill did not incorporate or contain the agreed stopping places. Defendants failed to comply with Article 8(c) of the Convention.

*Loss of Liability Limitations Under Article 9*

Article 9 of the Convention provides that "the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability" if the air waybill does not contain the agreed stopping

**27.** 93 F.3d 1022 (2d Cir.1996).

**28.** *Tai Ping Ins. Co. v. Northwest Airlines, Inc.,* 94 F.3d 29, 32 (2d Cir.1996).

**29.** *Id.*

**30.** *Id.* at 33.

**31.** Pl.Ex. B.

**32.** Pl.Ex. C at 29.

places. This loss of the limitation on liability applies with equal force to both the exclusion of limitation founded on Article 20 and the monetary cap on liability provided for in Article 22(2).[33] Because the waybill in this case did not contain the agreed stopping places, the defendants are not entitled to the limits provided for in Articles 20 and 22. And because the carrier is not entitled to the limitations of liability, the Court need not reach the issue of whether or not proof of wilful misconduct existed to satisfy Article 25.

Although defendants Singapore and Contact make much of the fact that it was Maeder who prepared the waybill and that, on their view of the facts, it was Maeder who booked the cargo on flights 865 and 26, these facts have no bearing on the application of Article 9 to limit liability as Article 9 makes no allowance for whose fault it is that the waybill is incomplete. Article 9 simply deprives the carrier of liability limitations "if the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain" the agreed stopping places. Additionally as the Court earlier wrote, "Singapore necessarily knew when it placed the shipment on a different flight that the route implicitly designated by Maeder would not be adhered to.... If Singapore lost limitation by virtue of the change, it has only itself to blame." [34]

The Second Circuit recognized in *Tai Ping* that this result may seem harsh for the mere omission of agreed stopping places.[35] The plain language of Article 9, however, is clear with respect to omissions. Altering the requirements of the Convention to suit the fairness of its results would be "an impermissible judicial amendment." [36]

*Conclusion*

Because the defendants accepted goods under a waybill that failed to include the agreed stopping places, they are not entitled to limit their liability under the Warsaw Convention. As the defendants have not otherwise disputed liability or the amount of damages, plaintiff's motion for summary judgment is granted and plaintiff is entitled to judgment in the amount of $277,256.23 plus interest. The motion of Singapore and Contact for partial summary judgment is denied.

SO ORDERED.

33. See Hitachi Data Systems Corp. v. United Parcel Service, Inc. 76 F.3d 276, 278 (9th Cir.1996) ("Article 9 and other references to provisions which exclude, 'limit,' or 'tend[ ] to relieve the carrier of' liability reach only provisions such as Articles 20 and 22, which limit damages recoverable against a carrier under the Convention or exclude it entirely in certain circumstances.") (citations omitted); see also Lisi v. Alitalia–Linee Aeree Italiane, S.p.A., 370 F.2d 508 (2d Cir.1966), aff'd by an equally divided court, 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27 (1968) (Articles 20 and 22 provisions which exclude or limit liability);

Molitch v. Irish Int'l Airlines, 436 F.2d 42, 44 (2d Cir.1970) (same); Butler's Shoe Corp. v. Pan American World Airways, Inc., 514 F.2d 1283, 1285 (5th Cir.1975) (same).

34. See American Home Assur. Co., 969 F.Supp. at 189.

35. Tai Ping, 94 F.3d at 33.

