MITSUI MARINE & FIRE
INSURANCE CO.,
Plaintiff,

v.

CHINA AIRLINES, LTD. Defendant.

No. 97 Civ. 5409(CBM).

United States District Court,
S.D. New York.

June 13, 2000.

Kennedy Lillis Schmidt & English by Mathew T. Loesberg, Charles E. Schmidt, New York City, for Plaintiff.

Condon & Forsyth LLP by Christopher Carlsen, New York City, for Defendant.

## OPINION

MOTLEY, District Judge.

This is an action for damage to CD–ROM drives shipped from Manila, Philippines to Los Angeles, California. For the reasons outlined below, summary judgment provides an appropriate means to establish defendant's liability as well as the amount of damages based on the actual value of the goods. This case is governed by the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. 876 (1934), reprinted in 49 U.S.C. § 40105 (commonly known as "the Warsaw Convention").

## BACKGROUND

Mitsumi Electronics Corp. ("Mitsumi") contracted with Pan Globe Cargo Express, Inc. ("Pan Globe") to transport 5,400 CD–ROM drives from Manila, Philippines to Los Angeles by air. Pan Globe accepted delivery of the 5,400 CD–ROM drives packed in 540 cartons in good condition. Pan Globe contracted with defendant, Chi-na Airlines, Ltd. ("China Airlines"), to ship the goods to Los Angeles. On May 29, 1996 China Airlines accepted all 540 cartons in Manila in good condition.

China Airlines flew the cargo from Manila to Taipei, Taiwan on flight CI636, then from Taipei to San Francisco on flight CI308 (making a scheduled stop in Anchorage, Alaska), and finally from San Francisco to Los Angeles on flight CI307. When the cargo arrived in Los Angeles China Airlines noted that some of the cartons were wet.

Mitsumi had insured the goods with Mitsui Marine and Fire Insurance Co. ("Mitsui"). Mitsui retained the firm of McLaren Toplis North America, Inc. ("McLaren") to survey the cargo and assess the damage. Mitsui determined that 950 CD–ROM drives had sustained water damage depriving them of any commercial or salvage value. Mitsui paid Mitsumi $95,047.50 under the insurance policy. The plaintiff in this case is Mitsui, bringing this action as subrogated underwriter of Mitsumi. The contracted sale price of the shipped CD–ROM drives was $87 each. The invoice price for the 950 damaged CD–ROM drives amounted to $82,-650.

## DISCUSSION

Both parties have moved for summary judgment. Plaintiff's motion seeks to establish three findings: 1) defendant's liability for the water damage; 2) that the damages for such liability are not limited by the Warsaw Convention; 3) that the damages amount to $82,650. A finding for plaintiff on all three issues resolves the entire case. Defendant's motion involves partial summary judgment, seeking to limit any potential liability for damages to $20 per kilogram. Granting plaintiff's motion necessarily involves denying defendant's motion, thus, only plaintiff's motion is discussed below.

## STANDARD FOR SUMMARY JUDGMENT

This circuit recognizes the value of summary judgment to expeditiously dis-

pose of meritless litigation. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). The mechanism of summary judgment promotes judicial economy by preventing further litigation on an issue with an unalterably predetermined outcome. The standard for summary judgment ensures that issues are efficiently resolved without compromising the rights of the non-moving party.

> Summary judgment may be granted only if the moving party can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 107 (2d Cir.1998) (internal citations omitted). Thus, the mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial. A disputed fact is immaterial when the outcome of the case remains the same regardless of the disputed issue. Factual questions which prove immaterial fail to preclude summary judgment. *See Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986) (noting that the existence of unresolved immaterial issues does not suffice to defeat a motion for summary judgment).

■ A party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment". *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986).

> Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

> The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue–not merely one that is colorable–of material fact is present.

*Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1132 (2d Cir.1989).

## EXISTENCE OF LIABILITY

■ The Warsaw Convention renders defendant's liability for the damage to the cargo easily established by summary judgment. It is undisputed that defendant accepted the cargo in good condition and delivered it in damaged condition. The Warsaw Convention, Article 18(1) presumes an air carrier liable for damage to cargo in transit. Given this presumption and the complete absence of evidence to suggest otherwise, no reasonable factfinder could reach a conclusion other than that defendant is liable for the damage at issue in this case.

## LIMITATION OF LIABILITY

■ Article 22 of the Warsaw Convention provides for a limitation of a carrier's liability for damage to cargo to $20 per kilogram. Defendant unsuccessfully seeks to avail itself of this limitation of liability. Article 9 of the Warsaw Convention prohibits carriers from enjoying Article 22's

limitation of liability if the carrier has failed to satisfy various technical requirements.

> If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in Article 8 a) to i), inclusive, and q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.

Warsaw Convention Article 9.

■ Article 8 of the Warsaw Convention describes the information required on the air waybill. The relevant provision for this case is Article 8(c) which requires the air waybill to contain "the agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right the alteration shall not have the effect of depriving the transportation of its international character." Article 9 serves to extend a carrier's liability even when the carrier's omission was otherwise commercially insignificant and had no causal connection to the cargo damage. See *Tai Ping Ins. Co., Ltd. v. Northwest Airlines, Inc.* 94 F.3d 29, 33 (2d Cir.1996) ("Article 9 does not make the loss of limited liability protection contingent on prejudice to the shipper or consignee").

The court finds that Anchorage and San Francisco were agreed stopping places and that defendant failed to list Anchorage and San Francisco on its air waybill. Thus, defendant cannot limit its liability pursuant to Article 22 because defendant failed to list all agreed stopping places. First, the court will explain why Anchorage and San Francisco constitute agreed stopping places within the meaning of the Warsaw Convention. Second, the court will explain why neither Anchorage nor San Francisco is adequately referenced in the air waybill to satisfy Article 8(c).

■■ Defendant makes two unpersuasive arguments why Anchorage and San Francisco are not agreed stopping places within the meaning of the Warsaw Convention. Both Anchorage and San Francisco are within the United States, the same country as Los Angeles, the intended destination of the cargo. Defendant contends that Anchorage and San Francisco are not "agreed stopping places" because the term applies only to countries, not to local stops within a country. Alternatively, defendant contends that Anchorage and San Francisco are not "agreed stopping places" because defendant's failure to list the stops implies that plaintiff never agreed to those stops. This case is not the first occasion in which a judge within the Southern District has rejected these two arguments as proffered by counsel for the defendant. Judge Chin's recent opinion in *Sotheby's v. Federal Express Corp.*, 2000 WL 628708 (S.D.N.Y.) explains in detail why the former argument is unpersuasive and the latter argument is inane. In that case Sotheby's had engaged FedEx to ship artwork from London, England to Newark, New Jersey. Due to staffing shortages in Newark, FedEx elected to fly the cargo to Memphis, Tennessee and then back to Newark the next day. Judge Chin held that FedEx's failure to list Memphis on the air waybill deprived it of the right to limit its liability under the Warsaw Convention.

■ Undisputedly, the international nature of a shipment is clear when an air waybill lists Manila, Phillippines as the origin and Los Angeles, California as the destination. Defendant argues that failure to list stops in Anchorage and San Francisco does not run afoul of Article 8(c) because listing those stops would not serve the already satisfied purpose of providing notice of the international character of the transportation. The Second Circuit has held that the purpose of Article 8(c) extends beyond simply putting shippers on notice of the international character of the transportation. See *Intercargo Ins. Co. v. China Airlines, Ltd.*, 208 F.3d 64, 68 (2d Cir.2000) (holding that the air waybill must still contain the agreed stopping places in

order for the carrier to enjoy the limitation of liability afforded by the Warsaw Convention even when the international character of the transportation is already clear from the air waybill). Additional scheduled stops within a country constitute agreed stopping places within the meaning of Article 8(c). See *Tai Ping Ins. Co., Ltd. v. Northwest Airlines, Inc.* 94 F.3d 29, 32 (2d Cir.1996) (holding that Article 8(c) required that a scheduled stop in Anchorage, Alaska be reflected in the air waybill for a shipment of cargo from Chicago, Illinois to Hong Kong). Thus, under the clear language of the Warsaw Convention, Anchorage and San Francisco, scheduled stops on the cargo's journey from Manila to Los Angeles, constitute agreed stopping places.

China Airline's argument that an unlisted stop was not "agreed to" would imply that Article 9 can never deprive carriers of limited liability for failure to comply with Article 8(c). China Airline's proffered interpretation would allow carriers to ship cargo through as many undisclosed stopping places as they please and still enjoy limited liability on the theory that their failure to disclose an intended stop implies that the stop was not agreed to by the shipper. "A more logical interpretation of Article 8(c) is that it requires the carrier to include on the air waybill all stopping places contemplated by the carrier." *Sotheby's v. Federal Express Corp.,* 2000 WL 628708, *5 (S.D.N.Y.). The Second Circuit has also favored the language "contemplated stopping places" to describe the information required to satisfy Article 8(c). *Tai Ping Ins. Co., Ltd. v. Northwest Airlines, Inc.* 94 F.3d 29, 32 (2d Cir.1996) ("the participants to the Convention included the requirement that the waybill contain the contemplated stopping places"). Any other interpretation of "agreed stopping places" would obviate the value of Article 8(c)'s provision allowing the carrier to "reserve the right to alter the stopping places in case of necessity". If unlisted stops cannot constitute "agreed stopping places", then Article 8(c)'s necessity provision becomes superfluous.

It is undisputed that neither the Pan Globe nor the China Airlines air waybill lists the cities of Anchorage or San Francisco or any symbol or abbreviation thereof. This fact in and of itself is not dispositive as the listing of stopping places need not be explicit. The requirement of listing agreed stopping places on the air waybill may be met indirectly by incorporation by reference. See *Tai Ping Ins. Co., Ltd. v. Northwest Airlines, Inc.* 94 F.3d 29, 32 (2d Cir.1996) (holding that a carrier may satisfy Article 8(c) if its air way bill notifies the shipper of stopping places by incorporating readily available timetables). Allowing incorporation by reference frees carriers from the requirement of listing all stops directly on the air waybill but still requires carriers to list complete and accurate information. The burden falls squarely on the carrier to ensure that adequate information is provided. "If a carrier chooses to incorporate the agreed stopping places by reference to its timetables then the carrier bears the risk that the incorporation will fail". *Intercargo Ins. Co. v. China Airlines, Ltd.,* 208 F.3d 64,69 (2d Cir.2000) (internal citations omitted).

Indisputably, defendant's air waybill does not list flights CI307 or CI308. Defendant could have preserved the limitation of liability had its air waybill informed the shipper that the goods would be transferred from flight CI636 to flight CI308 to flight CI307. If the airline's published timetables provided the shipper with adequate information to determine where and when the goods would stop en route, then the requirements of Article 8(c) would be met. Defendant contends that although its air waybill did not contain all flight numbers, the shipper could have divined the intended stopping places through an alternative, albeit circuitous, route. Defendant argues that the shipper possessed three documents: the China Airlines air waybill, the Pan Globe air waybill, and the shipper's invoice. Defendant argues that

the Pan Globe air waybill incorporated defendant's air waybill and the shipper's invoice. The shipper's invoice lists flights CI636 and CI308. Defendant does not contend that any of these three documents referred to flight CI307. In assessing the effectiveness of an attempted incorporation by reference, court's have held carriers to a strict standard. See *Tai Ping Ins. Co., Ltd. v. Northwest Airlines, Inc.* 94 F.3d 29, 33 (2d Cir.1996). Effective incorporation requires the China Airlines air waybill to list all three flight numbers and incorporate the timetables by reference. The fact that another air waybill cites an invoice which lists two flight numbers does not suffice. Even if the China Airlines air waybill were deemed to effectively incorporate the Pan Globe air waybill, the Pan Globe air waybill to effectively incorporate the invoice and the invoice to effectively incorporate the timetables, the fact that there is no indication of flight CI307 renders the information incomplete. "Without notice of the transfer, the shipper could not track its shipment and discover the scheduled stops from the timetables". *Intercargo Ins. Co. v. China Airlines, Ltd.,* 208 F.3d 64, 69 (2d Cir.2000). Thus, the court finds that the stops in Anchorage and San Francisco were neither incorporated directly or by reference in defendant's air waybill.

## AMOUNT OF DAMAGES

Because the Warsaw Convention's limitation of liability does not apply, defendant is properly held liable for the actual damage to the cargo. Plaintiff has submitted sufficient evidence to establish the extent of the cargo damage as amounting to $82,650. Plaintiff has submitted results of the survey conducted by McLaren. Defendant now challenges the competency of the survey report. Defendant declined to participate in the damage survey at the time it was conducted or to conduct its own survey of the cargo damage. Defendant has allowed the time for discovery to close without either deposing or serving interrogatories on the persons involved in the survey. Defendant has not pointed to any specific technique or methodology employed by the surveyors with which it can find fault. Instead, defendant merely rests on the speculatory allegation that perhaps the surveyors were not competent and perhaps the survey yielded inaccurate results. Such vague conclusory allegations, unsupported by evidence are insufficient to create a genuine question of material fact which would preclude summary judgment.

Defendant also now alleges that plaintiff failed to properly mitigate damages. Defendant suggests that perhaps plaintiff and its surveyors erred in deciding that the water damage had rendered all 950 CD–ROM drives entirely without commercial value. Defendant suggests that perhaps instead of destroying the damaged CD–ROM drives, the drives should have been submitted to some further unspecified testing to determine if they were truly worthless or if some other commercial use could be found. Defendant has failed to introduce any evidence that such testing even existed, let alone would have proved economically feasible. Defendant has also failed to introduce any evidence that the relevant CD–ROM drives had some commercial value. Defendant has failed to offer any evidence to dispute plaintiff's assessment of the value of the cargo damage and it is far too late in the course of litigation for defendant to rely on mere speculation.

## CONCLUSION

For the reasons outlined above, the court determines that this case may be fully resolved by summary judgment in favor of plaintiff. Defendant is liable for damages in the amount of $82,650, representing the actual value of the damaged CD–ROM drives.

### *ORDER*

For the reasons outlined in the memorandum opinion filed simultaneously herewith, plaintiff's motion for summary judgment is GRANTED and defendant's

motion for partial summary judgment is DENIED. The court finds defendant liable for damage to 950 CD–ROM drives. Defendant's failure to list all agreed stopping places on the air Waybill prevents defendant from enjoying the Warsaw Convention's limitation of liability and, thus, defendant is liable for the actual damage to the goods. The court finds that this actual damage amounts to $82,650. The court orders that final judgement in the amount of $82,650 plus interest and costs be entered in favor of plaintiff.