**INTERCARGO INSURANCE COMPANY, a/s/o Express Line Corporation, Plaintiff–Appellee,**

v.

**CHINA AIRLINES, LTD., Defendant–Appellant.**

**Docket No. 99–7260.**

United States Court of Appeals, Second Circuit.

Argued Oct. 20, 1999

Decided March 30, 2000

Stephen A. Frank (Lisa Ann Scognamillo, of Counsel), Badiak, Will & Maloof, New York, NY, for Plaintiff–Appellee.

Christopher Carlsen, Condon & Forsyth, New York, NY, for Defendant–Appellant.

Before: KEARSE, MINER and LEVAL, Circuit Judges.

Judge KEARSE dissents in a separate opinion.

MINER, Circuit Judge:

Defendant-appellant China Airlines, Ltd. ("CAL") appeals from a summary judgment in the sum of $22,600 entered against it in the United States District Court for the Southern District of New York (Berman, *J.*) in an action brought by plaintiff-appellee Intercargo Insurance Company ("Intercargo") as subrogee of Express Line Corporation ("Express Line"). The judgment represents the full value of the lost portion of air cargo shipped by Express Line from Los Angeles and intended for delivery in Hong Kong. The district court determined that CAL was not entitled to the limitation of liability afforded by the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929,

49 Stat. 3000, T.S. 876 (1934), *reprinted in* 49 U.S.C.A. § 40105 note ("Warsaw Convention"). This determination was grounded on a finding that the air waybill pertaining to the cargo did not conform to the Warsaw Convention's requirement for the listing of agreed stopping places on the waybill as a condition of limitation of liability. The district court determined that the reference to CAL's flight schedule in the air waybill was insufficient to invoke the "incorporation by reference" doctrine in this case. The district court also rejected a claim that the negligence of Express Line in filling out the waybill improperly foreclosed full recovery by the subrogee.

## BACKGROUND

The entire air cargo shipped by Express Line consisted of eleven cartons of computer parts to be carried from Los Angeles to Hong Kong by CAL. Air waybill No. 297–6300–8595, pertaining to this shipment, was prepared by Express Line as agent of CAL. The waybill specified Los Angeles as the airport of departure and Hong Kong as the airport of destination, and included on its face the flight number, CI317, and the date of flight, June 29, 1996. Flight No. CI317 is listed in CAL's published timetables as originating in Los Angeles and terminating in Taipei. Set forth as one of the Conditions of Contract on the reverse side of the waybill is a provision that "[t]he agreed stopping places ... are those places, except the place of departure and the place of destination, set forth on the face hereof or shown in carrier's timetables as scheduled stopping places for the route." No stopping places were listed on the face of the waybill.

After CAL Flight No. CI317 arrived in Taipei, the shipment was transferred to CAL Flight No. CI607 and carried to Hong Kong, where five of the eleven cartons shipped were found to be missing. The CAL air waybill pertaining to the shipment made no mention whatsoever of CI607. Intercargo, having insured Ex-

press Line for the full value of the cargo, paid $22,600 to MTC Worldwide Corp., Express Line's customer, for the value of the five cartons of computer parts that were lost. Intercargo, as subrogee, brought the action giving rise to this appeal to recover the amount paid from CAL. Claiming the limitation of liability benefits of the Warsaw Convention, CAL contended that its liability was limited to $9.07 per pound of lost cargo or a total of $795.69. Intercargo's position was that, since the air waybill did not properly designate agreed stopping places as required by the Convention to invoke its limited liability provisions, CAL should be liable for the full amount of the lost cargo.

The foregoing contentions of the parties were put forward in cross-motions for summary judgment, and the district court heard the oral arguments of counsel for both parties. In its opinion granting Intercargo's motion and denying CAL's motion, the court defined the issue before it as "whether or not CAL's air waybill had to include reference to transfer Flight No. CI607." The court stated that "[i]f this question is answered affirmatively, [it] must also decide whether Intercargo's claims are barred by the alleged negligence of its insured/subrog[o]r, Express [Line]." Answering the principal question in the affirmative, the district court determined that the failure "to list either Taipei by name or to include 'transfer information' reflecting that CAL Flight No. CI607 moved the cargo from Taipei to Hong Kong," constituted noncompliance with the Warsaw Convention's requirement to list "agreed stopping places" as a condition of limitation of liability. As to the claim of negligence on the part of Express Line for filling out the waybill incorrectly, the court found that, the consignor being responsible under the Warsaw Convention only for particulars relating to the goods shipped, Express Line could not be liable for any error relating to the listing of agreed stopping places on the CAL air waybill.

Pursuant to the district court's order, judgment in favor of Intercargo was entered on February 5, 1999 in the amount of $22,600 plus pre-judgment interest and costs. This appeal followed.

## DISCUSSION

Article 8 of the Warsaw Convention provides that the air waybill "shall contain" seventeen enumerated particulars listed in items (a) through (q), including the following:

> (c) The agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right, the alteration shall not have the effect of depriving the transportation of its international character . . .

Article 9 of the Warsaw Convention provides:

> If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.

*Brink's Ltd. v. South African Airways*, 93 F.3d 1022 (2d Cir.1996), involved the loss of a part of a cargo of precious metals shipped from Johannesburg, South Africa, to New York City by South African Airways (SAA). The shortage in the cargo was not discovered until the arrival of the shipment in New York. *See id.* at 1025–26. We were confronted with the question of "whether an air waybill that incorporates essential particulars by reference to documents outside the waybill and to statements within the waybill satisfies Articles 8 and 9." *Id.* at 1033. Under the circumstances presented in that case, we answered the question in the affirmative. Although the flight from Jan Smuts Airport in Johannesburg to John F. Kennedy Airport in New York made a regularly scheduled refueling stop at Ilha Do Sal in the Cape Verde Islands, that stop was not specifically noted in the space provided on the SAA waybill for routing information. However, the back of the waybill included the statement that the agreed stopping places were those shown on the SAA timetables. It was undisputed that the timetables listed the Cape Verde Islands as a regularly scheduled stopover for the flight in question. *See id.* at 1025 n. 3. SAA contended that this incorporation by reference to its timetables of the refueling stop satisfied the requirements of Article 8. We agreed.

Our conclusion in *Brink's* was guided by the following three rules, which we abstracted from a review of our previous case law:

> First, if an air carrier *omits* any of the enumerated particulars of subsections (h) and (i) of Article 8, Article 9 deprives the carrier of limited liability protection if the omitted particular is of commercial significance. Second, if an air carrier omits any other essential particular from its air waybill, Article 9 deprives the air carrier of limited liability protection regardless of commercial significance. Third, if an air waybill includes an essential particular, but deviates in language or some other respect, the question of whether or not Article 9 deprives the air carrier of limited liability may be determined with the assistance of traditional methods of interpretation.

*Id.* at 1033–34 (citations omitted). Finding the third rule applied, we invoked traditional methods of interpretation by referring to sources outside the text and found that, in accordance with decisions of lower federal courts, state courts and the courts of other Warsaw Convention signatory nations, incorporation by reference to timetables was an acceptable means of designating stopping places. In arriving at our conclusion, we were also guided by what we concluded, based on a review of the drafting history and contemporary commentary, was the purpose of 8(c)—to provide notice to the shipper of the interna-

tional character of the flight. *See id.* at 1034.

■ In *Brink's*—as in this case—the international character of the flight was evident from the face of the waybill. An air waybill that lists Johannesburg (or Los Angeles) as the place of departure and New York City (or Hong Kong) as the place of destination reveals the international character of the flight. In such cases, listing the stopping places can provide no further notice of this character (and the consequent applicability of the Warsaw Convention)—yet *Brink's* clearly holds, as the Warsaw Convention facially requires, that the air waybill must nonetheless "contain ... the agreed stopping places" in order for the carrier to invoke the limited liability provisions. While *Brink's* holds that in circumstances similar to its facts, there is an alternative method of complying with Article 8(c)'s requirement, it does not do away with the requirement on the ground that its original purpose is otherwise satisfied.[1] We therefore disagree with those courts that have found, as a "logical extension" of the determination in *Brink's* that notification of the international character of the carriage was the purpose of the stopping place requirement, that a waybill need not contain the stopping places if the international character is clear from the points of origin and departure. *See, e.g., AI Marine Adjusters, Inc. v. Forwarding Sys. Int'l,* No. 97 C 1015, 1999 WL 199588, at *7 (N.D.Ill.1999). Indeed, we made this limitation clear in the companion case of *Tai Ping Ins. Co. v. Northwest Airlines, Inc.,* 94 F.3d 29, 33 (2d Cir.1996), heard by the same panel:

Concededly, the air waybill ... reveals the international character of the flight and the applicability of the Warsaw Convention. Nevertheless, if the air waybill does not incorporate the agreed stopping places effectively, the air waybill does not contain the information required by Article 8(c).

While *Brink's* held that incorporation of timetables by reference was a permissible method of complying with the Article 8(c) stopping place requirement, *Tai Ping* provided instruction on what information was necessary to effect a valid incorporation. *Tai Ping* involved a shipment of aircraft parts that never arrived at its destination in Hong Kong. The face of the air waybill listed the airport of departure in Chicago, Illinois and the airport of final destination in Hong Kong. It also listed Flight Number 901 with a departure date of December 10. The reverse side of the waybill included a statement that the agreed stopping places were either "set forth on the face [t]hereof or shown in Carrier's timetables." *Id.* at 30. The airline's published timetables for all trans-Pacific flights on December 10, 1992 disclosed regularly scheduled stops in Anchorage, Alaska, as well as Narita, Japan. The issue in *Tai Ping,* however, was that the actual carriage of the cargo deviated from these details. First, the actual date of departure for the shipment was December 15, not December 10. Second, the cargo was transferred from the listed Flight No. 901 to Flight No. 907 in Narita, Japan before continuing to the final destination in Hong Kong.

1. *Brink's* allowed the incorporation of flight schedules by reference to satisfy the "stopping place" requirement in the context of a manifestly international flight. The opinion also noted that "[w]hile the point of departure and destination ordinarily would indicate the domestic or international character of the flight, Article 8(c) recognizes the possibility of carriage within one sovereign with a stop-over in another sovereign." *Id.* at 1035. The *Brink's* opinion did not deal with the seemingly domestic transportation that is rendered international in character by a foreign stopover— for example, a carriage from New York to Los Angeles with a stopover or a transfer in Toronto. We have not yet been presented with the question whether merely listing flight number(s) on the face of the waybill and incorporating the airline's timetables by reference would satisfy the "stopping place" requirement if the consignor were not put on notice of the international character of such a flight by the waybill's listing of the points of departure and destination. We are doubtful that it would.

We found that the inaccurate information regarding the date of departure and the omission of transfer information was fatal to the validity of the incorporation. We concluded:

> Without notice of the transfer, the shipper could not track its shipment and discover the scheduled stops from the timetables. Thus, in light of the *incorrect and omitted* information, [the carrier's] air waybill did not incorporate or "contain" the agreed stopping places under its contract of carriage with [the consignor].

*Id.* at 33 (emphasis added). We further cautioned that if a carrier "chooses ... to incorporate the agreed stopping places by reference to its timetables ... then [the carrier] bears the risk that the incorporation will fail." *Id.* And if the attempted incorporation by reference fails, because of incomplete or inaccurate information, then the waybill will not contain the information required by Article 8(c), notwithstanding the obvious international character of the flight. *See id.* Here, as in *Tai Ping,* the information on the face of the air waybill is incomplete and inaccurate in that it fails to include the fact that the cargo was to be carried from Taipei to Hong Kong on Flight CI607. The air waybill here specifically designated Los Angeles and Hong Kong as the places of departure and destination, respectively, and CI317 as the flight number. Although the cargo was carried from Taipei to Hong Kong on Flight No. CI607, that flight was nowhere listed. Nor was any agreed stopping place listed on the face of the waybill. Rather, the reverse of the waybill included boilerplate language to the effect that the waybill incorporated as stopping places those stops indicated in CAL's published flight schedules.

CAL argues that it included sufficient information in the waybill to communicate the "agreed stopping places" as Article 8(c) requires. Because the face of the waybill, together with the schedule for flight CI317, revealed the Los Angeles departure, the stop in Taipei, and the ultimate destination of Hong Kong, it contends that it complied with the requirements of Article 8(c) without the need to reveal the identity of the second leg flight as CI607.

This argument however misses the point of our holdings in *Brink's* and *Tai Ping.* In *Brink's,* we excused a carrier's failure to comply literally with the stopping places requirement of Article 8(c) where (1) the international character of the flight was clear on the face of the waybill and (2) the waybill information was accurate and complete. In *Tai Ping* we made clear that, in order to rely on the *Brink's* formula for incorporating "agreed stopping places" by reference, the carrier must include on the waybill accurate and complete information as to transfer flight numbers and dates. Without this information, the incorporation of flight schedules will fail. CAL would have us further enlarge our tolerance for deviation from the literal requirements of Article 8(c), giving the carrier the protection of limited liability, notwithstanding that its waybill neither "contain[ed] ... the agreed stopping places" directly nor furnished accurate and complete information identifying the flights on which the cargo would be carried.

We believe that *Tai Ping*'s strict requirement as to transfer information is proper. First, Article 8(c) is a notice provision. We decline to obscure still further the notice consignors receive by obliging them to deduce the stopping places from a factually incomplete or inaccurate listing of flights. This seems too far removed from the Convention's plain requirement that the waybill "contain ... the agreed stopping places." Second, because it is the carrier that seeks the benefit of the Convention's limitation on liability, it is reasonable to require it to bear the burden of compliance by providing accurate flight information. Third, because the carrier is responsible for the waybill and possesses the information about its routes, it is logical that the burden of preventing mistakes

**70**

or misunderstandings be placed on the carrier. The burden in any event is not a heavy one, and—as the district court correctly noted—the choice of how to comply with Article 8(c) remains the carrier's. CAL could have complied literally with Article 8(c) simply by listing "Taipei" as a stopping place on the face of the air waybill. It chose instead to comply with Article 8(c) by incorporating its flight schedules as approved by our holdings in *Brink's* and *Tai Ping.* To effect a valid incorporation, those holdings required CAL to give the flight numbers and dates of the flights on which the cargo would be carried. CAL would have met that requirement had it done so as to both flights.

■ Therefore, we reaffirm *Tai Ping*'s reading of the *Brink's* doctrine and hold that when a carrier seeks to comply with Article 8(c) without listing stopping places but instead incorporates by reference its scheduled timetables, the flight information included on the waybill must be both accurate and complete.[2]

■ Finally, we agree with the district court that Express Line, the subrogor of Intercargo, cannot be liable for negligence in filling out the air waybill in regard to agreed stopping places. According to Article 10(1) of the Warsaw Convention, "[t]he consignor shall be responsible for the correctness of the particulars and statements relating to the goods which he inserts in the air waybill." A consignor's duty is therefore limited to supplying correct information in relation to the goods shipped. Since a consignor has no duty to provide correct information relating to agreed stopping places, it cannot be found

negligent for failing to do so. The duty to supply correct information in regard to this particular falls upon the carrier seeking to take advantage of the Convention's limitation of liability provisions, regardless of who actually fills out the air waybill.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

·KEARSE, Circuit Judge, dissenting:

I respectfully dissent. As indicated in the air waybill, the cargo at issue in the present case was to be carried from Los Angeles to Hong Kong. It is true that the waybill did not describe Taipei as a "stopping place[]," Warsaw Convention Art. 8(c), *in haec verba.* However, in *Brink's Ltd. v. South African Airways,* 93 F.3d 1022 (2d Cir.1996), *cert. denied,* 519 U.S. 1116, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997), this court determined that Article 8(c)'s requirement that the waybill "contain .... the agreed stopping places" could be satisfied by the waybill's reference to the air carrier's published timetables. We interpreted Article 8(c) in a common–sense fashion, ruling that the stopping places were adequately disclosed because (a) the international character of the journey was clear from the face of the waybill, (b) the waybill listed the number of the flight on which the goods were to be carried, and (c) the carrier's timetables identified that flight's scheduled stops between the goods' point of origin and their destination. 93 F.3d at 1035.

---

**2.** We believe that the arguments of the dissent fail for two independent reasons. First, the dissent argues that there was sufficient information on the waybill from which to draw the "necessary inference ... that the goods would stop in Taipei." *See infra* at [dis. opn. page 71]. That is true. But the waybill provided no information as to how the cargo would proceed from Taipei to Hong Kong. It did not tell whether there would be further stops. Without this information, it failed to advise what

were "the agreed stopping places." Second, the dissent assumes a valid incorporation of CAL's schedules. The dissent argues that in *Tai Ping* the attempted incorporation of Northwest's schedules failed solely because the airline gave the wrong date for the origination flight. *See infra* at [dis. opn. page 71]. However, *Tai Ping* makes quite clear at several points that both the inaccurate date *and* the omitted transfer information were independent reasons why the attempted incorporation failed.

We .... noted that incorporation of readily available timetables provides a shipper with sufficient notice of the international character of the flight, thereby realizing the drafters' purpose in including the agreed stopping places in the air waybill.... Accordingly, we held that an air waybill that incorporates readily available timetables satisfies Article 8(c)'s requirement that the air waybill "contain" the "agreed stopping places" and does not deprive the air carrier of limited liability protection under Article 9.

*Tai Ping Insurance Co. v. Northwest Airlines, Inc.,* 94 F.3d 29, 32 (2d Cir.1996) (discussing *Brink's*).

I see no meaningful difference between this case and Brink's. Here, the international character of the goods' journey was clear. The waybill identified Los Angeles as the place of the goods' departure and Hong Kong as their destination. With respect to stopping places, the waybill stated, in pertinent part, that "[t]he agreed stopping places .... are those places, except the place of departure and the place of destination .... shown in the carrier's timetables as scheduled stopping places for the route." The waybill stated that the cargo would be carried on China Airlines Flight No. CI317. And the carrier's timetables showed that Flight CI317 was a non–stop flight from Los Angeles to Taipei. Thus, the necessary inference was that the goods would stop in Taipei.

The majority distinguishes this case from *Brink's* on the ground that the information provided here was not "complete" because it did not reveal how the goods would be transported from Taipei to Hong Kong. Yet the majority also indicates that if the waybill here had simply designated Taipei as a "stopping place" *in haec verba* without any information as to how the goods would be transported from Taipei to Hong Kong, that would have sufficed to satisfy Article 8(c). However, in the latter instance the shipper would have known no more than it did here, namely that its

goods were starting off for Hong Kong on a flight that went only to Taipei. In my view, in light of our ruling in *Brink's* that the carrier's timetables are to be taken into account, the revelation here that the goods could not get to Hong Kong on Flight CI317 and must stop in Taipei should also suffice.

I am not persuaded that *Tai Ping Insurance Co. v. Northwest Airlines, Inc.,* requires a different result. In that case, we reasoned that the incorporation of timetables was insufficient because the "waybill included incorrect information regarding the date of departure. Without the correct date of departure, the shipper could not refer to the timetables to ascertain the stopping places." 94 F.3d at 33. "Thus, although the waybill referred to readily available timetables, the timetables referred to did not apply to the transportation of Tai Ping's shipment." *Id.* at 32–33. We concluded that "a reference to timetables on a date other than the date of shipment does not effect an incorporation of regularly scheduled stops on the date of shipment." *Id.* at 33. Simply put, if the carrier wishes to rely solely on waybill–plus–timetable to provide disclosure as to stopping places, it is incumbent on the carrier not to deviate from the information shown in those documents. However, there was no such deviation in the present case.

In sum, I would reverse the judgment in the present case, given the rulings in *Brink's* that "[a]n air waybill that refers the shipper to readily available timetables provides sufficient information to notify the shipper of the agreed stopping places," 93 F.3d at 1035, and in *Tai Ping* that if the carrier's incorporation by reference to readily available timetables "effectively reveals the agreed stopping places," that incorporation "satisfies Article 8(c)'s requirement that the waybill 'contain' the agreed stopping places." 94 F.3d at 32. The waybill in the present case disclosed the international character of the flight and, together with the carrier's readily available timetables, it "effectively"—indeed neces-

sarily—revealed Taipei as a stopping place simply by reason of the fact that, on the flight that was accurately listed, the goods destined for Hong Kong could go nowhere other than Taipei.