SOTHEBY'S, Plaintiff,

v.

**FEDERAL EXPRESS CORPORATION,**
**Defendant.**

**No. 99 CIV. 1610(DC).**

United States District Court,
S.D. New York.

May 15, 2000.

Kennedy Lillis Schmidt & English, by Charles E. Schmidt, Matthew T. Loesberg, Craig S. English, New York City, for Plaintiff.

Condon & Forsyth LLP, by Christopher Carlsen, New York City, R. Jeffrey Kelsey, Federal Express Corporation, Memphis, TN, Newman, Fitch, Altheim, Myers, P.C., by Olivia M. Gross, New York City, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

In this cargo case, Sotheby's, through an agent, hired Federal Express Corporation ("FedEx") to transport three pieces of artwork (the "Artwork") from London, England to Newark, New Jersey. The air waybill provided that the Artwork was to be flown on FedEx Flight 005 from London, England to Newark, New Jersey. FedEx in fact transported the Artwork to Newark on Flight 005, but then, due to its own weekend staffing needs, transported the Artwork on FedEx Flight 007 from Newark to Memphis, Tennessee and then from Memphis back to Newark the next day on FedEx Flight 3501. While in Memphis, one of the three pieces of Artwork, a painting, was damaged by a forklift.

Sotheby's moves for partial summary judgment holding FedEx liable for the full value of the damage to the painting and striking the limitation of liability affirmative defenses asserted by FedEx in its answer. FedEx cross-moves for partial summary judgment limiting its liability, if any, to twenty dollars per kilogram of the weight of the damaged painting, pursuant to Article 22 of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. 876 (1934), reprinted in 49 U.S.C. § 40105, commonly known as the Warsaw Convention. The issue before the Court is whether, under these circumstances, FedEx can take advantage of the limitation of liability provided by the Warsaw Convention. For the reasons that follow, Sotheby's motion is granted and FedEx's cross-motion is denied.

## BACKGROUND

### A. The Undisputed Facts

The undisputed facts, taken from the parties' Local Civil Rule 56.1 Statements and exhibits thereto, are as follow.

On October 10, 1997, Air Express International Limited ("AEI") booked transportation of Sotheby's Artwork for carriage by FedEx the following day from London, England to Newark, New Jersey. The Artwork had a total gross weight of 478 kilograms and a chargeable weight of 669 kilograms. AEI completed an air waybill, numbered 023-90756002, for the shipment. The air waybill specified London as the departure airport and Newark, New Jersey as the destination airport. It also included on its face both the date of the flight, October 11, and the flight number, 005. The designated spaces on the air waybill for listing stopping places between London and Newark were left blank and no other flight numbers appeared on the waybill. AEI did not make a special declaration of value or pay a supplementary sum for the shipment.

FedEx received the Artwork without taking exception to its condition or packaging, and stamped the air waybill as prepared by AEI. On October 11, 1997 FedEx Flight 005 carried the Artwork from Lon-

don to Newark as scheduled. That same day, however, the Artwork was placed on FedEx Flight 007 and transported from Newark to Memphis, Tennessee where it was stored overnight. While in Memphis, one of the three pieces of Artwork, a painting by Sir Anthony Van Dyck entitled "Portrait of Prince Charles Louis, The Elector Palatine," was damaged. The following day, FedEx transported the Artwork, including the damaged painting, back from Memphis to Newark on FedEx Flight 3501. Upon the shipment's arrival in Newark, damage to the outer packaging of the painting was noted.

**B. Additional Facts**

Sotheby's contends that AEI specifically selected FedEx Flight 005 because it was a non-stop flight, that AEI advised FedEx that the Artwork had to be transported non-stop, and that FedEx contracted to carry the Artwork on Flight 005. (Pl. Local Civ. R. 56.1 St.). FedEx argues that it never agreed to ship the Artwork directly from Newark to London without stops, and asserts that it expressly reserved its right to route the shipment any way it saw fit. (Def. Opp. Local Civ. R. 56.1 St.). At oral argument, counsel for FedEx explained that the Artwork was taken from Newark to Memphis because weekend staffing shortages left FedEx without personnel to unload the cargo from the storage containers in Newark. (Tr. at 9).

According to FedEx, the terms and conditions of FedEx's International Express Freight Worldwide Service Guide ("Service Guide") applied to the transportation of the Artwork. (Def. Local Civ. R. 56.1 St.). Sotheby's disputes that these terms and conditions applied to the shipment but also contends, apparently in the alternative, that AEI did not make a special declaration of value or pay a supplementary fee because it was precluded from doing so by the Service Guide. (Pl. Opp. Local Civ. R. 56.1 St.). According to Sotheby's, the damaged painting is worth approximately $1,000,000. (Compl.¶ 10)

## DISCUSSION

### A. Motion for Summary Judgment

The standards governing motions for summary judgment are well settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the nonmoving party's favor. *See id.*

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *National Union Fire Ins. Co. v. Deloach*, 708 F.Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (internal quotations omitted)).

### B. The Warsaw Convention

The parties agree that Sotheby's claim is governed by the provisions of the Warsaw Convention.

#### 1. Liability

■ The first prong of Sotheby's motion seeks partial summary judgment holding

FedEx liable for Sotheby's loss. Although FedEx argues that its liability, "if any," is limited in accordance with the Warsaw Convention, it does not otherwise contest this portion of Sotheby's motion, and counsel for FedEx admitted as much at oral argument. (Tr. at 2–3).[1]

"In general, Article 18 of the Warsaw Convention presumes an air carrier liable for loss or damage to goods in transit." *Tai Ping Ins. Co., Ltd. v. Northwest Airlines, Inc.,* 94 F.3d 29, 31 (2d Cir.1996). FedEx does not dispute that it received the Artwork without taking exception to its condition or packaging, and that the painting or its packaging was damaged in Memphis. (Pl. Local Civ. R. 56.1 St.; Def. Opp. Local Civ. R. 56.1 St.); *see also* Local Civ. R. 56.1(c) ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party.").

Moreover, the record contains uncontroverted evidence that the painting was damaged while in transit. For example, plaintiff has put forth: (1) a letter from FedEx to AEI stating that the shipment was "broken down in Memphis" and that "comments that were taken from the computer do state that the freight was damaged prior to build up at Memphis"; (2) a survey report from Crawford–THG International Loss Adjusters concluding that the blades of a forklift caused the damage to the painting; and (3) FedEx's answer admitting, upon information and belief, that the damage to the packaging was noted prior to delivery in Newark. (Affidavit of Matthew T. Loesberg, dated Nov. 24, 1999, at Exs. 2, 3, and 5). Accordingly, Sotheby's motion for summary judgment on the issue of liability is granted. I now turn to the second prong of Sotheby's motion and FedEx's cross-motion.

### 2. *Limitation of Liability*

Sotheby's and FedEx cross-move for partial summary judgment on the issue of whether FedEx is entitled to a limitation of liability for Sotheby's loss pursuant to Article 22 of the Warsaw Convention. Article 22(2) of the Warsaw Convention limits a carrier's liability to twenty dollars per kilogram, unless the shipper makes a special declaration of greater value and pays any required extra fees. *See* 49 U.S.C. § 40105, Art. 22(2); *Federal Ins. Co. v. Yusen Air & Sea Serv. Pte, Ltd.,* No. 97 Civ. 3830, 1998 WL 477987, at *2 (S.D.N.Y. Aug.14, 1998). Because AEI did not declare a greater value for the damaged painting, FedEx contends that its liability is limited to twenty dollars per kilogram.

Article 9 of the Warsaw Convention, however, provides that the Article 22 limitation of liability shall not apply "if the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in Article 8(a) to (i), inclusive, and (q)." 49 U.S.C. § 40105, Art. 9. Article 8(c), in turn, provides that the air waybill shall contain "[t]he agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right, the alteration shall not have the effect of depriving the transportation of its international character." 49 U.S.C. § 40105, Art. 8; *see Intercargo Ins. Co. v. China Airlines, Ltd.,* 208 F.3d 64, 67 (2d Cir.2000). In other words, under the Warsaw Convention there is a limitation on a carrier's liability. The limitation does not apply, however, if the waybill does not list all the "agreed stopping places." The limitation is not lost, however, when the carrier makes an unlisted stop in a "case of necessity," and the carrier has reserved the right to do so.

---

1. Notably, FedEx does not raise the affirmative defenses, asserted in its answer, that Sotheby's (1) failed to provide timely notice of its claim, (2) breached the contract, (3) assumed the risk, or (4) failed to package the shipment adequately.

■ In the Second Circuit, a carrier may include the required stopping place information on an air waybill either explicitly, or by incorporating its scheduled timetables reflecting those stops by reference. *See Intercargo*, 208 F.3d at 68; *Tai Ping*, 94 F.3d at 31. Sotheby's contends that FedEx may not limit its liability under Article 22(2) because the air waybill issued in connection with the shipment failed to include Memphis as an "agreed stopping place," either explicitly or by incorporation.[2]

It is uncontested that the Artwork was transported to Memphis, and that the air waybill omits both the word "Memphis" and the transfer flight numbers 007 and 3501 that would have revealed the stop in Memphis by incorporation. Nevertheless, FedEx argues that its failure to include a reference to Memphis or the transfer flights on the air waybill does not deprive it of the protection of the liability limitation because Memphis was not an "agreed stopping place" within the meaning of Article 8(c). FedEx's argument is three-fold.

### a. *Article 8(c) Does Not Exclude Local Stops*

■ First, FedEx argues at length that Article 8(c) refers only to countries in which the transportation stops, not local stops within those countries. In support of its argument, FedEx points to the purported purpose of Article 8(c)—providing notification to shippers of the international character of the transportation and the applicability of the Warsaw Convention—and its drafting history. This argument has been squarely rejected by the Second Circuit. As the Circuit Court recently explained,

2. The fact that FedEx did not fill out the air waybill does not change the analysis. *See Intercargo*, 208 F.3d at 70 (the duty to supply correct information regarding agreed stopping places "falls upon the carrier seeking to take advantage of the Convention's limitation of liability provisions, regardless of who actually fills out the waybill").

An air waybill that lists Johannesburg (or Los Angeles) as the place of departure and New York City (or Hong Kong) as the place of destination reveals the international character of the flight. In such cases, listing the stopping places can provide no further notice of this character (and the consequent applicability of the Warsaw Convention)—yet [Second Circuit precedent] clearly holds, as the Warsaw Convention facially requires, that the air waybill must nonetheless "contain ... the agreed stopping places" in order for the carrier to invoke the limited liability provisions .... We therefore disagree with those courts that have found ... that notification of the international character of the carriage was the purpose of the stopping place requirement.

*Intercargo*, 208 F.3d at 68.

■ Moreover, Second Circuit precedent demonstrates that local stops within a country are considered "stopping places" for purposes of Article 8(c). In *Tai Ping*, the court held that for transportation from Chicago, Illinois to Hong Kong, the carrier's "waybill did not effect a valid incorporation of regularly scheduled stops in Anchorage, Alaska and Narita, Japan by reference to its timetables." *Tai Ping*, 94 F.3d at 32. It is clear that although the stop in Alaska would not have involved a separate country, Article 8(c) required its inclusion on the waybill. *See id.; see also Tai Ping Co. Ltd. v. Expeditors Int'l, E.I.,* 34 F.Supp.2d 169, 170–71 (S.D.N.Y.1998) (waybill for shipment from Cleveland, Ohio to Hong Kong failed to include stopping place of Fairbanks, Alaska). Accordingly, FedEx's first argument is rejected.[3]

3. FedEx's arguments based upon an amendment to the Warsaw Convention, Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air, Signed at Warsaw on October 12, 1929, as amended by the Protocol Done at the Hague on September 8, 1955 (hereinafter "MP–4"), reprinted in S. Exec. Rep. No. 105–20, pp. 21–32 (1998),

### b. *Plaintiff's Failure to "Agree" to Memphis*

■ Second, FedEx argues that because Sotheby's did not agree to have its Artwork stop in Memphis, Memphis is not an "agreed" stopping place required by Article 8(c) to be included on the air waybill. Notwithstanding the fact that the Second Circuit has said that the meaning of "agreed stopping places" in Article 8(c) is clear and unambiguous, *see Maritime Ins. Co. Ltd. v. Emery Air Freight Corp.*, 983 F.2d 437, 440 (2d Cir.1993), in this context, there is some ambiguity as to the meaning of "agreed." On the one hand, FedEx argues that "agreed stopping places" refers to places both the shipper and the carrier actually agreed would be stopping places when the waybill was issued. On the other hand, Sotheby's argues that FedEx's interpretation does not make sense.

I agree with Sotheby's. The term "agreed" cannot mean, as FedEx argues, that both the shipper and the carrier literally agreed to the stopping places before the waybill was issued. The Second Circuit has held that Article 8(c) is "a notice provision." *Intercargo*, 208 F.3d at 69. If "agreed" is interpreted to mean that both the shipper and carrier literally agreed to the stopping places, then notice to the shipper of those stopping places would be superfluous. Indeed, *Intercargo* implicitly acknowledges that shippers have not literally agreed to the stops in advance of the shipment; as the Second Circuit there held, "Article 8(c) is a notice provision. We decline to obscure still further the notice consignors receive by obliging them to deduce the stopping places from a factu-

ally incomplete or inaccurate listing of flights." *Id.* Had the shipper literally agreed to the stopping places in advance, there would be no reason for it to have to *deduce* stopping places at all.

■ Rather, a more logical interpretation of Article 8(c) is that it requires the carrier to include on the air waybill all stopping places contemplated by the carrier. The shipper then "agrees" to those stopping places, explicitly or implicitly, by accepting shipment under the waybill. Here, if FedEx contemplated shipping the Artwork to Memphis due to weekend staffing shortages, or otherwise, it should have included Memphis as a stopping place on the air waybill. Had FedEx included Memphis as a stop on the air waybill, Sotheby's would have had notice of the contemplated stop and it could have agreed to the stop or not. It would be illogical to reward FedEx for its failure to provide Sotheby's with notice of the stop in Memphis—and consequently the opportunity to agree or disagree to Memphis as a stopping place—by allowing FedEx to take advantage of the Warsaw Convention's limitation of liability. Indeed, Article 9's limitation of liability for failure to include agreed stopping places would be rendered meaningless by such a result.

FedEx's interpretation also makes no sense because it completely undermines the provision. Under FedEx's reading, a carrier could unilaterally decide to send cargo anywhere in the world but because the shipper had not "agreed" that these places were stopping places, the carrier would not be required to list them on the waybill and the carrier would not lose the

---

effective in the United States on March 4, 1999, are unavailing. In an attempt to avoid the problem of MP–4's non-retroactivity (and thus inapplicability to Sotheby's shipment), FedEx argues that MP–4 does not amend but rather "clarifies" Article 8(c)'s stopping place requirement and that the clarification supports its position that Article 8(c) does not apply to local stops within a country. While the Second Circuit did not specifically address MP–4, it rejected FedEx's interpretation

of Article 8(c) on March 30, 2000, well after the effective date of MP–4. *See Intercargo*, 208 F.3d at 68. Assuming without deciding that MP–4 does not require a carrier to include local stops on the waybill, such a change is in the nature of an amendment and may not be retroactively applied to Sotheby's shipment. *Cf. Cruz v. American Airlines, Inc.*, 193 F.3d 526, 530 (D.C.Cir.1999) (MP–4's baggage weight requirement is non-retroactive amendment, not clarification).

limitation of liability. Such a result is nonsensical.

Moreover, the Convention provides that a carrier may at times, out of necessity, have to stop at places beyond its contemplation at the time of shipment. Article 8(c) expressly provides that "the carrier may reserve the right to alter the stopping places in case of necessity." This language would be superfluous under FedEx's interpretation, for no such language would be required if the carrier were obligated only to list the stopping places agreed to by the parties in advance. In other words, if a carrier did not lose the benefit of the limitation because it did not list a stop that had not been previously "agreed" to, there would be no need to provide that the limitation was not lost when the carrier made an unanticipated stop because of "necessity."

Finally, FedEx has not argued necessity as a defense; nor could it. FedEx surely should have anticipated the weekend staffing shortages, and it should have given Sotheby's notice that the goods would have to be flown to Memphis. At that point, Sotheby's could have "agreed" to Memphis as a stopping point, or it could have chosen another option. Accordingly, FedEx's second argument is rejected.

**c. The Parties' Contract Does Not Preclude a Finding that Memphis Was an Agreed Stopping *Place***

Third, FedEx argues that the parties' contract precludes a finding that Memphis was an agreed stopping place required to be disclosed on the waybill by Article 8(c) because: (1) FedEx's Service Guide provides "there are no stopping places which are agreed at the time of tender of the shipment" and expressly reserves FedEx's right to route the shipment as it deemed appropriate; (2) paragraph 8.2 of the "Conditions of Contract" located on the reverse side of the air waybill provides that FedEx is authorized by the shipper "to select the routing and all intermediate stopping places that it deems appropriate or to change or deviate from the routing shown on the face hereof"; and (3) the face of the air waybill provides that the "shipper agrees that the shipment may be carried via intermediate stopping places which the carrier deems appropriate."

**i. *Routing Provisions***

 Whether located in the Service Guide or the air waybill, contractual language pertaining to routing, including language reserving FedEx's right to route plaintiff's shipment as it saw fit, does not absolve FedEx of its duty to include agreed stopping places on the air waybill. Under the Warsaw Convention, "routing" and "stopping place" are distinct concepts addressed in separate subsections. Article 8(p) of the Warsaw Convention explicitly addresses routing and is not included among the particulars required by Article 9. In contrast, Article 8(c) explicitly addresses stopping places and is a required particular under Article 9. *See* 49 U.S.C. § 40105, Arts. 8(c), 8(p), & 9. The Warsaw Convention does not define either term.

 Undefined terms in a statute are to be given their "ordinary or natural meaning[s]." *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 188 (2d Cir.1999); *Cf. Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 215 (2d Cir.1999) ("Treaties are construed in much the same manner as statutes."). Moreover, "a statute should be construed so that all of its parts are given effect, and a construction ascribing to two separate statutory provisions the same meaning and scope is [therefore] disfavored." *United States v. Stephenson*, 183 F.3d 110, 121 (2d Cir.) (quotations and citations omitted), *cert. denied*, —— U.S. ——, 120 S.Ct. 517, 145 L.Ed.2d 400 (1999). Giving the terms their ordinary and natural meanings, and keeping in mind that the drafters of the Warsaw Convention chose to address the terms in separate statutory provisions, I hold that FedEx did not merely make a change in routing; it added Memphis as a stopping

place. Indeed, two additional flights and an overnight stay were added to what was listed in the waybill as one flight. *See Chubb & Son, Inc. v. Asiana Airlines,* No. 96 Civ. 5082, 1997 WL 1040543, at *5 (S.D.N.Y. Jun.17, 1997 ) (Report and Recommendation of Magistrate Judge Peck) (finding carrier did not merely change routing but rather omitted stopping place).[4]

■ FedEx argues that interpreting stopping place to mean any place where the transportation stops renders the term "route to be followed" meaningless. This argument is clearly incorrect. A carrier remains free to choose the route to be followed in going from point A to point B without disclosing a stopping place; for example the carrier may choose to travel a longer distance in reaching its destination to avoid flying over water or certain countries' airspace. If a carrier chooses to stop at a particular location, however, and not just to pass over or through it, it must disclose that location as a stopping place on the air waybill in accordance with Article 8(c). Accordingly, FedEx may not use contractual language pertaining to routing as a shield against the consequences of its failure to include Memphis as a stopping place.

### ii. *Stopping Place Provisions*

■ FedEx contends that the terms and conditions of its Service Guide, applicable to Sotheby's shipment via the air waybill, disclaimed agreement as to stop-

ping places. The "Conditions of Contract" printed on the air waybill issued in connection with Sotheby's shipment do not expressly incorporate the terms and conditions of the Service Guide.[5] I must therefore decide whether Paragraph 2.2.3 of the Conditions of Contract printed on the air waybill effectively incorporates the Service Guide by reference.

■ A contract must clearly and accurately identify a document to effectively incorporate it by reference. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 30 (2d Cir.1997) ("Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt."); *see also Tai Ping,* 94 F.3d at 32 (effective incorporation depends on accuracy of information in waybill). Paragraph 2.2.3 of the Conditions of Contract on Sotheby's air waybill incorporates the "applicable tariffs, rules, conditions of carriage, regulations and timetables" of the carrier into the contract of carriage. (Def. Local Civ. 56.1 St., Ex. A). This language does not make clear reference to the Service Guide, and as a result the air waybill does not effectively incorporate the Service Guide into the parties' contract of carriage. Thus, the terms and conditions of the Service Guide, including the disclaimer as to stopping places, are inapplicable to Sotheby's shipment and Sotheby's motion striking FedEx's affirmative defense based upon the Service Guide is granted.[6]

---

**4.** After Judge Peck issued his Report and Recommendation, the parties raised a new, dispositive issue in a supplemental motion. Accordingly, the district judge denied the parties' original summary judgment motions as moot without considering Judge Peck's Report and Recommendation. *See Chubb & Son, Inc. v. Asiana Airlines,* No. 96 Civ. 5082, 1998 WL 647185, at *7 (S.D.N.Y. Sept.22, 1998).

**5.** Because the waybill in this case does not expressly incorporate the Service Guide, it is distinguishable from *Insurance Co. of North America v. Federal Express Corp.,* 189 F.3d

914 (9th Cir.1999), cited by FedEx. There, the Ninth Circuit held that Federal Express did not fail to disclose Memphis as an agreed stopping place where its air waybill expressly incorporated the Service Guide, including the stopping place disclaimer. *See id.,* 189 F.3d at 918.

**6.** FedEx's tariff, on the other hand, is incorporated into the provisions of the waybill. Although raised as a defense in its answer, FedEx has neither pressed the argument in its moving or opposition papers nor provided the Court with a copy of its tariff. The Court assumes FedEx does not contest that portion

■ Finally, FedEx argues that two provisions explicitly printed on the waybill—Sotheby's agreement that the Artwork could be carried "via intermediate stopping places which the carrier deems appropriate," and Sotheby's authorization that Fedex could "select . . . intermediate stopping places,"—obviated its need to comply with Article 8(c). This argument fails for three reasons.

First, Memphis is not an "intermediate" stop on the planned route. The Artwork was not taken from London to Memphis to Newark; if that had happened, Memphis arguably would have qualified as an intermediate stop. Instead, FedEx took the Artwork from London to Newark as planned and then from Newark to Memphis and back. Memphis was not an "intermediate" stop; rather, it was an additional and, from Sotheby's point of view, superfluous stop.

■ Second, even assuming Memphis is considered an intermediate stop, the language on the waybill has the effect of relieving the carrier of the full liability that would ordinarily be imposed upon it by the Warsaw Convention. As a consequence, the contractual provision is rendered null and void by Article 23 of the Warsaw Convention. *See* 49 U.S.C. § 40105, Art. 23 ("Any provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this convention shall be null and void, but the nullity of any such provision shall not involve the nullity of the whole contract, which shall remain subject to the provisions of this convention."). Finally, Sotheby's agreement that the Artwork could be carried "via intermediate stopping places which the carrier deems appropriate" is expressly contingent upon Sotheby's not providing contrary instructions on the waybill. Here, the waybill does provide

contrary instructions, that is, Sotheby's selection of Flight 005, a nonstop flight.

Although imposing liability on FedEx for the full value of the damaged painting may be harsh, FedEx could have complied with Article 8(c), and preserved its limitation of liability defense, simply by listing "Memphis" as a stopping place on the air waybill. Moreover, holding FedEx liable for its failure to include Memphis as a stopping place furthers Article 8(c)'s goal of providing accurate information to the shipper. *See Intercargo*, 208 F.3d at 69. Accordingly, I hold that Memphis was an agreed stopping place required to be disclosed on the air waybill by Article 8(c), the omission of which precludes FedEx from taking advantage of the Warsaw Convention's limitation of liability.

## CONCLUSION

For the reasons set forth herein, Sotheby's motion for partial summary judgment is granted; FedEx's motion for partial summary judgment is denied. The parties shall appear for a conference on June 23, 2000 at 11:30 a.m. in Courtroom 11A, United States Courthouse, 500 Pearl Street, New York, New York 10007.

SO ORDERED.

---

of Sotheby's motion. In any event, in reviewing a copy of the tariff Sotheby's submitted to the Court (FedEx does not contest its accuracy) it is clear that the tariff is of no assistance to FedEx. (*See* Certification of Gary James Piesley, dated November 22, 1999 at Ex. 4).

The tariff merely defines stopping places as those places set forth on the face of the air waybill or incorporated by reference to timetables. Accordingly, Sotheby's motion striking FedEx's affirmative defense based upon the tariff is also granted.