**FEDERAL INSURANCE COMPANY,**
**Plaintiff–Appellant,**

v.

**YUSEN AIR & SEA SERVICE(S) PTE. LTD. doing business as Yusen Air Cargo, Defendant–Appellee.**

**Docket No. 00–7417.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 27, 2000

Decided: Nov. 13, 2000

Charles E. Schmidt, Matthew T. Loseberg, Kennedy Lillis Schmidt & English, New York, N.Y. for Plaintiff–Appellant Federal Insurance Company.

Michael O. Hardison, Alàn Van Praag, Snow Becker Krauss P.C., New York, N.Y. for Defendant–Appellee Yusen Air & Sea Service(s) Pte. Ltd.

Before: FEINBERG, MINER, KATZMANN, Circuit Judges.

PER CURIAM:

Plaintiff Federal Insurance Company ("plaintiff") appeals an order and judgment of the United States District Court for the Southern District of New York (Harold Baer, *J.*), entered on March 17, 2000, to the extent that such judgment limits plaintiff's damages to $380.00.

Reviewing the instant matter *de novo,* see *Retrofit Partners I, L.P. v. Lucas Indus., Inc.,* 201 F.3d 155, 159 (2d Cir.2000), we reverse the district court's award of summary judgment to the extent that such judgment limits plaintiff's damages to $ 380.00. It is clear from the record that defendant's air waybill did not comply with Article 8(c) of the Warsaw Convention, and therefore the defendant is not entitled to the limitations on liability provided for by Article 22(2) of the Warsaw Convention.

This case involves the loss of shipping cargo and the subsequent dispute over who is to pay for that loss. On August 15, 1995, New England Circuit Sales d/b/a NECX ("NECX") purchased cargo consisting of 6,000 pieces of integrated circuits from F.T. Industrial Supplies (Pte.) Ltd. ("F.T."), for a total of $324,000. NECX arranged for Yusen Air & Sea Service(s) Pte. Ltd. d/b/a Yusen Air Cargo ("Yusen" or "defendant"), a freight forwarder, to carry the cargo by air from Singapore to Peabody, Massachusetts. Yusen arranged for the cargo to be transported on KLM Airlines from Singapore to Massachusetts via Amsterdam.

On August 18, 1995, Yusen's driver picked up the cargo from F.T. in Singapore. The Yusen driver brought the cargo to its warehouse, where the cargo was weighed, measured and checked in. A Yusen employee then prepared the export documentation including two air waybills, one for Yusen and one for KLM. Both the Yusen Air Waybill and the KLM Master Air Waybill list the flights/dates as KL838/19 and KL639/20. Yusen then delivered the cargo to the ground handling agents for KLM at Singapore Changi International Airport. The next morning

KLM advised Yusen that it could not locate the cargo and that the matter had been referred to the Airport Police for further investigation.

Yusen then advised NECX that the cargo could not be located. On May 27, 1997, plaintiff, as subrogated underwriter of NECX, commenced this action against Yusen under the Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. 876 (1934), *reprinted in* 49 U.S.C. § 40105, commonly known as the Warsaw Convention, for the non-delivery of the cargo which Yusen was to ship from Singapore to Massachusetts. Yusen then brought a third-party action against KLM seeking contribution and/or indemnity from KLM for the alleged loss of NECX's cargo. That third-party action is no longer before the court because Yusen and KLM have settled.

After plaintiff moved for summary judgment, Yusen cross-moved for partial summary judgment, seeking to limit plaintiff's damages to $380—19 kilograms (the weight of the cargo) times the applicable limitation ($20.00 per kilogram)—pursuant to Article 22(2) of the Warsaw Convention. In an opinion and order dated August 12, 1998, the district court granted defendant's motion for partial summary judgment, limiting Yusen's potential liability to $380. Plaintiff then successfully moved for summary judgment on the issue of the defendant's liability for the loss of the cargo, and the district court entered judgment for the plaintiff in the amount of $380. Plaintiff appeals from that part of the judgment limiting its damages to $380. The defendant has not appealed the district court's decision that it is liable to the plaintiff.

Article 22(2) of the Warsaw Convention limits a carrier's liability to $20.00 per kilogram, unless the shipper declares a greater value and pays any required extra fee. It is undisputed that the shipper NECX never declared a greater value for

the cargo, nor paid any extra fees. However, plaintiff argues that Article 9 of the Warsaw Convention precludes the defendant from asserting the limitation of liability provided by Article 22(2). Article 9 of the Convention precludes the limitation on liability "[i]f the carrier accepts goods without an air waybill having been made out," or if the air waybill does not contain the particulars set out in Article 8(a) to (i) and 8(q). Plaintiff asserts that Yusen is not entitled to limit its liability under Article 22(2) because (1) Yusen accepted the goods before issuing an air waybill, and (2) Yusen's Air Waybill failed to include the agreed stopping places as required by Article 8(c). Because we agree with the plaintiff that Yusen's Air Waybill did not comply with the requirements of Article 8(c), we need not and do not reach the issue of whether the goods were accepted before the issuance of the air waybill.

■ Article 8(c) of the Warsaw Convention requires that an air waybill set forth: "The agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right the alteration shall not have the effect of depriving the transportation of its international character." It is the rule in this Circuit that an air waybill that incorporates readily available timetables of an air carrier satisfies Article 8(c)'s requirement that the air waybill contain the agreed stopping places and does not deprive the carrier of limited liability protection. *See Tai Ping Ins. Co. v. Northwest Airlines, Inc.*, 94 F.3d 29, 32 (2d Cir.1996). In order for the incorporation to be effective, however, the carrier's timetables must provide sufficient information to inform the shipper of the scheduled stopovers. *See id.*

■ The district court held that "Yusen's Air Waybill complies with Article 8(c) because it incorporated KLM's timetables by reference and provided sufficient information to inform the shipper of the scheduled stopover in Amsterdam." Although

the district court's decision was a reasonable interpretation of the caselaw at the time of its ruling, subsequent cases from this Circuit make clear that providing information from which the shipper can infer the place and times of the scheduled stopover is sufficient under the Warsaw Convention only if the information provided about the carrier flights is both accurate and complete. *See Intercargo Ins. Co. v. China Airlines, Ltd.*, 208 F.3d 64, 69–70 (2d Cir.2000).

In this case Yusen's Air Waybill fails to list Amsterdam as a stopping point for the shipment. As found by the district court, the Air Waybill does list flight details for the air carriage—"KL838/19 and KL639/20"—and expressly incorporates KLM's timetables by reference. However, the incorporation by reference of KLM's timetables is ultimately unavailing because Yusen's Air Waybill contains an incorrect identification of the flight number and thus does not meet this court's requirement that the "flight information included on the waybill must be both accurate and complete." *Intercargo*, 208 F.3d at 70. Specifically, although flight number KL838 from Singapore to Amsterdam is correct, flight number KL639 did not exist on the date of the shipment. Flight KL639, a flight from Amsterdam to Boston, operated from March 26, 1995, to May 1, 1995, but not on August 20, 1995.

Yusen argues, and the district court held, that the fact that the listed flight number for the second leg of flight did not exist on August 20, 1995, is not significant because NECX could have ascertained that Amsterdam was the agreed stopping place merely on the basis of the listing of KLM Flight 838 alone. Furthermore, Yusen argues that by examining KLM's timetables NECX could have discovered that the cargo was in fact proceeding from Amsterdam to Boston on Flight 8039. Flight 8039 operated from May 2—October 28, 1995, and had the same departure and arrival time as Flight 639, as well as the same destination. Using language

similar to the district court's, Yusen argues that this information is "sufficient" to invoke the protections of Article 22(2) of the Warsaw Convention. This argument has already been considered and rejected by this court.

In *Intercargo,* the goods were being transported from Los Angeles to Hong Kong. No stopping places were listed on the air waybill. The air waybill provided accurate flight information for the cargo's journey from Los Angeles to Taipei but did not provide a flight number for the second leg of the journey, from Taipei to Hong Kong. *See Intercargo,* 208 F.3d at 66. The defendant argued that because the shipper had notice that the cargo was stopping in Taipei, the shipper could deduce that the shipment would proceed by direct flight from Taipei to Hong Kong. This court soundly rejected such an argument. We reaffirmed a "strict requirement as to transfer information," and refused to require that shippers "deduce the stopping places from a factually incomplete or inaccurate listing of flights." *Id.* at 69. We made perfectly clear that "when a carrier seeks to comply with Article 8(c) without listing stopping places but instead incorporates by reference its scheduled timetables, the flight information included on the waybill must be both accurate and complete." *Id.* at 70. By listing the incorrect flight number on the Air Waybill, Yusen did not comply with this requirement.

The holding in *Intercargo* clearly applies in this case and mandates reversal of the district court's decision. Because the test set forth in *Intercargo* was not met, Yusen's Air Waybill does not satisfy the requirements of Article 8(c) and the limitation on liability in Article 22(2) is not applicable.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded to the district court for a determination of the damages for which the defendant is liable.